# Staunton.

## J. W. CROWELL v. JOHN A. DUNCAN.

September 23, 1926.

Absent, West, J.

1. NEW TRIAL—*Plaintiff's Assertion of Two Theories of Liability of Defendant—General Verdict—Instruction that Defendant was Liable if Jury Believed Either Theory of Plaintiff—Evidence to Support Both Theories—Case at Bar.*—In the instant case, an action for negligent injuries, the action was tried upon two theories of liability as far as defendant was concerned. As the verdict was a general one, and did not indicate upon which theory of plaintiff's case it was founded, and as the court instructed the jury, in effect, that if they believed either theory upon which plaintiff sought to hold the defendant liable was supported by evidence they should find for the plaintiff, if the evidence failed to support the verdict upon both theories, the verdict should be set aside.

2. APPEAL AND ERROR—*Conflicting Evidence—Case Viewed as Upon a Demurrer to the Evidence.*—Where questions of fact upon which the evidence is conflicting have been determined in favor of the plaintiff, the Supreme Court of Appeals views the evidence upon these questions practically as upon a demurrer to the evidence and the inquiry as to each is, was there evidence to support the finding?

3. MASTER AND SERVANT—*Termination of the Relationship—Evidence Contradicting Testimony of the Master and Servant that the Relationship had Terminated—Case at Bar.*—In the instant case, an action against a father, the owner of an automobile, for injury to plaintiff occurring when the automobile driven at an illegal rate of speed by defendant's adult son struck plaintiff, plaintiff asserted that the son was a servant of the father. The automobile had been operated as a taxi. Both father and son testified that the relationship of master and servant had terminated before the accident. Several witnesses, however, testified that they had seen the son driving the car with the taxi sign on it after the time of the accident and one of the witnesses testified that on the day of the accident the son had driven him home and collected a fare from him.

    *Held:* That there was ample evidence to justify the conclusion reached by the jury that the son was still in the employment of the defendant and in charge of the taxi at the time of the accident.

4. .Questions of Law and Fact—*Credibility of Witnesses—Weight of the Evidence*.—The jury are the sole judges of the credibility of the witnesses and the weight of the evidence.

5. Master and Servant—*Negligence—Scope of Servant's Employment—Burden of Proof*.—In an action against a master for the negligence of his servant where the agency is admitted, the burden is upon the defendant to show that the servant was not acting within the scope of his employment. When the relation of master and servant is established, and the master undertakes to show that he comes within an exception to the general rule, the burden of proving that he does so is upon the master.

6. Master and Servant—*Negligence of Servant—Liability of Master*.— The general rule is that the master is liable for all tortious acts of the servant committed by such servant while acting within the scope of his employment.

7. Master and Servant—*Scope of Servant's Employment—Doubt Resolved against the Master*.—Where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority the doubt will be resolved against the master, because he set the servant in motion, at least to the extent of requiring the question to be submitted to the jury.

8. Master and Servant—*Automobile Accident—Scope of· Employment— Questions of Law and Fact—Case at Bar*.—In the instant case, plaintiff was injured when struck by an automobile belonging to the defendant, driven at an illegal rate of speed by defendant's adult son. The car was kept for hire by defendant and he turned it over to the son with authority and in his discretion to transact such business as he could and make return to him as employer. At the time of the accident within business hours, with a taxi sign prominently displayed, the son driving at a reckless rate of speed ran into and injured the plaintiff. The burden was upon the master under these circumstances to prove that the servant was not acting within the scope of his employment.

   *Held:* That, as the evidence left the question in doubt, the court did not err in submitting it to the jury and their verdict was conclusive.

9. Master and Servant—*Automobile Accident—Scope of Servant's Employment—Evidence not Sufficient to Show that Servant was Not Acting within Scope of his Employment—Case at Bar*.—In the instant case, an action by plaintiff against defendant to recover for injury incurred when he was struck by defendant's car driven at an illegal rate of speed by the defendant's adult son, the son testified that in company with a companion he went to a restaurant where he met a friend who suggested that they take the car and catch up with two girls and take them home. This they undertook to do, and while proceeding along the street, ran into plaintiff. The son was corroborated in this tes-

timony. The car was operated as a taxi with the son as chauffeur. The accident occurred in business hours with a taxi sign prominently displayed.

*Held:* That this evidence was not sufficient to sustain the burden of proof that the son was not acting within the scope of his employment. The case is to be distinguished from that of a private chauffeur acting under specific orders.

10. QUESTIONS OF LAW AND FACT—*Credibility of Witnesses—Rebuttal of Prima Facie Case.*—The jury are the judges of the credibility of the witnesses, and usually, when a *prima facie* case has been made out by the plaintiff the question as to whether it has been rebutted is for the jury.

11. MASTER AND SERVANT—*Liability of Master for Negligence of Servant—Discretion of Servant—Scope of Employment.*—Where discretion is vested in a servant as to the handling of any instrumentality placed in his hands by the master, this is a weighty circumstance for the consideration of a jury in determining whether or not the master is liable for an injury inflicted by such servant while in charge of such instrumentality, that is, whether the servant is acting within the scope of his employment.

12. MASTER AND SERVANT—*Liability of Master—Taxi Driver—Case at Bar.*— When a taxi driver was in charge of his taxi in business hours within the territory of his employment with his taxi sign displayed, the mere fact that he had a friend in the taxi with him and he and his friend testify that they were pursuing their own pleasure, is not conclusive of the question as to whether he was acting within the scope of employment as a matter of law. At best, even if they are to be believed, the question would still be one of fact for the jury as to whether the chauffeur was not combining his pleasure or business with that of his master's. This does not relieve the master of liability.

13₅ MASTER AND SERVANT—*Taxi Driver—Action for Negligence—Liability of Master—Instructions.*—In an action for injury to plaintiff when struck by a taxi, the court instructed the jury, if the owner of the car acquiesced in his chauffeur transporting his friends free of charge where the chauffeur was accustomed to haul passengers and where he was likely to be hailed by passengers, although at the time of the injury the chauffeur was not transporting a passenger for hire, that the exhibition of a taxi sign and the running of the car at a place apt to be hailed as a jitney were facts to be considered in determining the question, whether or not the operation of the car at the time of the injury was within the scope of the chauffeur's employment.

*Held:* That this instruction was even more favorable to the defendant than he was entitled to, as it did not make any difference whether the defendant knew the chauffeur carried his friends at times free of charge or not.

14. MASTER AND SERVANT—*Automobile Accident—Liability of Master—Scope of Employment—Burden of Broof—Case at Bar.*—In the instant case, an action by plaintiff against defendant for injuries received when struck by defendant's car driven by defendant's adult son, the court instructed the jury that if they believed the car was owned by defendant and defendant was in the habit of having the car run by his son as a jitney as his agent, then the burden was on the defendant to show that the son was not acting within the scope of his employment at the time of the injury, and if defendant failed to sustain this burden and the jury believed that the son was his agent, they should find for the plaintiff, provided the son negligently or unlawfully injured the plaintiff.

*Held:* That the instruction correctly propounded the law.

15. MASTER AND SERVANT—*Automobile Accident—Driver under the Influence of Liquor—Knowledge of Master of Servant's Intemperate Habits—Case at Bar.*—In the instant case, an action by plaintiff for injury received when he was struck by defendant's car driven by defendant's adult son, plaintiff alleged that defendant negligently permitted his son, knowing him to be of intemperate habits and because of such habits a reckless and dangerous driver, to use defendant's car at will; and, that while under the influence of liquor the son negligently ran the automobile at an unlawful rate of speed along a public street and into the plaintiff, injuring him. There was sufficient evidence to sustain these allegations.

*Held:* That a verdict for plaintiff could not be disturbed.

16. AUTOMOBILE—*Intemperate Habits of Driver—Evidence to Establish Habits.*—In the instant case, an action for injury to plaintiff when struck by defendant's car driven by his adult son, a large number of witnesses testified that the son had the reputation of a drinking man. The son himself admitted that on the evening of the accident he had taken several drinks, and that his license to drive was revoked for that reason.

*Held:* That the evidence justified the conclusion that the son's habits were very intemperate.

17. AUTOMOBILE—*Master and Servant—Intemperate Habits of Chauffeur—Case at Bar.*—In the instant case, an action for injury to plaintiff when struck by an automobile driven by the adult son of defendant, who had taken several drinks and whose reputation as a drinking man was bad, several witnesses testified that the chauffeur was a good and careful driver. But any man who indulges in the use of intoxicants is a potential menace to the public safety as an automobile driver. One who is given to drinking intoxicating liquor must be regarded as an unsafe and a potentially incompetent and dangerous driver, and the owner of an automobile who knows of such habits and entrusts it to such a driver may be liable for injuries to third persons which follow.

18. AUTOMOBILES—*Intemperate Habits—Incompetency—Liability of Owner*.—
     The habit of drink produces the most dangerous sort of incompetence,
     and the owner who knows of the habit of drink in one he permits to
     drive his automobile at will, assumes the risk of recklessness and in-
     competence on the part of such driver just as fully as if such driver
     was incompetent because of lack of experience or for any other cause,
     and permitted him to drive his car knowing he was incompetent.

19. AUTOMOBILES—*Intemperate Habits of Driver—Knowledge of Father of
     Son's Intemperate Habits—Case at Bar*.—In the instant case plain-
     tiff was struck by an automobile owned by defendant and driven by
     his adult son, the son had taken several drinks and was driving reck-
     lessly and at an illegal rate when plaintiff was struck. The father
     admitted that he knew that his son drank. Incompetence, reckless-
     ness and accident are so universally sequel of drinking, that an
     owner of an automobile is put on notice of what is likely to occur if he
     does not take active steps to prevent anyone addicted to drinking
     from driving it. If he fails in the performance of this duty he should
     suffer the consequences of his neglect.

     *Held:* That the father was liable.

20. AUTOMOBILES—*Intemperate ·Habits of Driver—Knowledge of the Owner—
     Verdict of Jury*.—In the instant case, an action by plaintiff against
     defendant for injury received when defendant's car, driven by his
     adult son, when under the influence of liquor, recklessly and at an
     illegal rate of speed, struck defendant, the jury by their verdict for
     plaintiff found that the defendant knew or had reasonable cause to
     know that his son was in the habit of getting under the influence of
     intoxicants. There was ample evidence to support this conclusion
     and the verdict of the jury could not be disturbed.

21. INSTRUCTIONS—*Conflicting Instructions—Instruction more Favorable to
     Plaintiff in Error than he was Entitled to—Case at Bar*.—In the instant
     case it was contended that an instruction was erroneous because in
     conflict with two other instructions. The instruction, however,
     correctly propounded the law applicable to the facts and if the two
     other instructions were in conflict with it they were also in conflict
     with the conclusions reached by the Supreme Court of Appeals on
     this branch of the case and were therefore more favorable to the
     plaintiff in error than he was entitled to.

22. INSTRUCTIONS—*Repetition—Refusal of Instruction*.—It is not error to
     refuse an instruction which correctly propounds the law of the case
     where the instructions given fully covered the case including the
     proposition set out in the instruction refused.

23. AUTOMOBILES—*Liability of Owner—Intemperate Habits of Driver—
     Evidence—Case at Bar*.—In the instant case, an action by plaintiff
     against the owner of an automobile for injuries incurred when struck
     by the automobile driven by defendant's adult son when under the in-
     fluence of liquor, plaintiff's theory was that the intemperate habits of

the son were known to the father. On the trial the court refused to permit defendant to testify that he had received no complaint from the post office authorities about the conduct of his son in carrying mail. *Held:* That there was no error in the court's action in this matter.

Error to a judgment of the Circuit Court of Pulaski county, in a proceedings by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Gilmer & Wysor,* for the plaintiff in error.

*John S. Draper* and *Tipton & Tipton,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

J. W. Crowell is here complaining of a judgment in the sum of $1,000.00 rendered against him in May, 1925, in the Circuit Court of Pulaski county, in favor of John A. Duncan.

It is undisputed that on January 3, 1925, Bruce Crowell, adult son of J. W. Crowell, driving a Dodge automobile belonging to his father at an excessive rate of speed, on the streets of the town of Pulaski, after having taken two or three drinks of whiskey, negligently ran into and injured John A. Duncan.

John A. Duncan, hereafter referred to as plaintiff, brought action against the father, J. W. Crowell, hereafter referred to as defendant, alleging damages in the sum of $5,000.00, and the judgment complained of resulted.

The action was prosecuted and tried upon two theories of liability as far as the defendant was concerned.

The first was that the defendant operated a taxi for hire in the town of Pulaski; that he hired his son Bruce Crowell as his chauffeur or agent and put him in charge and control of the Dodge automobile, and that, while acting as such agent, in the general scope of his authority, Bruce Crowell negligently ran into and injured the plaintiff.

The second was that the defendant negligently permitted Bruce Crowell, knowing him to be of intemperate habits, and because of such habits a reckless and dangerous driver, to use his (defendant's) automobile at will, and that while under the influence of liquor he negligently ran defendant's automobile at an unlawful rate of speed along the streets of Pulaski and into the plaintiff, injuring him.

Evidence was introduced by the plaintiff on both these theories of alleged liability, and the trial court instructed the jury upon both theories.

The defendant met the first charge of liability with the contentions (and with testimony to support them): 1. That at the time of the injury to plaintiff the relationship of master and servant between defendant and Bruce Crowell had been terminated. 2. That if this relationship had not been terminated, at the time of the injury, Bruce Crowell was not performing any service for the defendant, but was engaged in an enterprise of his own.

He met the second charge of liability by the assertion and his own testimony that, while he knew Bruce Crowell drank at times, he never knew him to be under the influence of liquor to any extent while driving his automobile, and that he considered him a safe and careful driver. The court instructed the jury upon the several defenses thus raised, and the jury returned a general verdict for the plaintiff without designating the ground of liability upon which it rested the verdict.

The defendant alleges four grounds of error as follows:

1. That the judge of the circuit court erred in refusing to give defendant's instruction No. 12.

2. In giving instructions numbered 1, 2, 4 and 6.

3. In refusing to permit defendant to testify that he had received no complaints from the post office authorities about Bruce Crowell's conduct in carrying the mail.

4. In refusing to set the verdict aside as contrary to the law and the evidence.

As we view the case it is not necessary to discuss any of the grounds of error with any elaborations except the fourth, since, for the most part, the correctness or incorrectness of the instructions will appear from the discussion of this question.

[1] All the instructions given appear in the margin.*
As the verdict is a general one, that is, that it did not indicate upon which theory of the plaintiff's case it

---

* 1.  The court instructs the jury that if they believe from the evidence that J. W. Crowell, the owner of the car, acquiesced in his chauffeur, Bruce Crowell, transporting his friends free of charge in his, the said J. W. Crowell's jitney, where the said Bruce Crowell, said chauffeur, was accustomed to haul passengers and where he was likely to be hailed by passengers, and although Bruce Crowell at the time of the injury was not transporting a passenger for hire, that the exhibition of a jitney or taxi sign and the running of said car at a place apt to be hailed as a jitney, are facts to be considered in determining whether or not the operation of said car, as aforesaid, at the time of the injury was within the scope of the chauffeur's employment.

2.  The court instructs the jury that if they believe from the evidence that the plaintiff was injured as alleged in his notice; that the said injuries were caused by the negligent or unlawful act of the said Bruce Crowell; and if they further believe that the said Bruce Crowell was driving the automobile at the time of the accident in a reckless manner on account of being then and there under the influence of intoxicants; and if they further believe he was in the habit of getting under the influence of intoxicants for some time prior to the accident, and that his father, J. W. Crowell, knew or had reasonable cause to know of the habits of his son, then he is liable for the acts of his son while running said automobile under the influence of intoxicants; unless the jury believe from the evidence that J. W. Crowell took effectual means to prevent the use of his automobile by his son.

3.  The court instructs the jury that if they believe from the evidence that J. W. Crowell left said automobile in the city garage under the direction of his son, Bruce Crowell, then the jury may infer that the said Bruce Crowell had implied permission and authority to use said automobile.

was founded and as the court instructed the jury, in effect, that if they believed either theory upon which the plaintiff sought to hold the defendant liable, was supported by evidence, they should find for the plaintiff, under a familiar rule, if the evidence fails to support the verdict upon both theories it will be necessary to set the verdict aside.

The consideration of the question of the sufficiency of the evidence, therefore, resolves itself into a discussion, upon the first theory under which the plaintiff seeks to hold the defendant liable, of the following questions:

1. Was Bruce Crowell the agent of the defendant at the time of the injury of plaintiff.

(It will be recalled that it was conceded that he was negligent. There was no defense upon this charge.)

2. Was he acting within the scope of his employment at the time of the accident?

Upon the second theory under which the plaintiff

4. The court instructs the jury that an automobile in the possession of and driven by a person under the influence of intoxicants is a dangerous instrumentality. And the law places the duty on an owner of an automobile to use due care in preventing such use of said car, when the owner knows or has reason to know that one who has been operating the same is addicted to intoxicants.

And if the jury believe that J. W. Crowell knew or had reasonable cause to believe that his son was addicted to intoxicants, then he owed to the plaintiff and the public at large the duty of exercising due care to prevent the use of said car by his son.

5. The court instructs the jury that they are the sole judges of the credibility of the evidence and witnesses, and although one or more witnesses may positively testify as to an alleged fact, yet the jury may consider from the evidence, the interest or motive of the witness in so testifying, the improbability of the statement in the light of the surrounding facts and circumstances, and although said statement may not be contradicted by witnesses, they may altogether disregard said statement if they believe the same to be improbable or untrue.

6. The court instructs the jury that if they believe from the evidence that the car was owned by J. W. Crowell, and that J. W. Crowell was in the habit of having said car run by his son, Bruce Crowell, as a jitney, as his agent, then the burden is on the defendant to show to the satisfaction of the jury that Bruce Crowell was not acting in the scope of his employment at the time of the injury.

And you are instructed further that if the defendant fails to sustain this burden, and believe that his son was his agent, you shall find for the plaintiff,

seeks to hold the defendant liable the questions involved are:

A. Was Bruce Crowell, independently of the question of agency, a man of such intemperate habits in the use of ardent spirits that it was negligence on the part of any one knowing of his habits to permit him to use, at will, his automobile, and

B. Did the defendant know of the intemperate habits of Bruce Crowell.

[2] The jury has resolved all these questions favorably to the contention of the plaintiff and against the contention of the defendant, and we must view the evidence upon these several points practically as upon a demurrer to the evidence, and the inquiry as to each is, was there evidence to support the finding?

[3, 4] 1. The evidence discloses that for some years prior to the injury to plaintiff the defendant had been operating an automobile for hire, a taxi, in, and in the vicinity of, the town of Pulaski; that he and Bruce also

provided that you further believe that the said Bruce Crowell negligently or unlawfully injured the plaintiff as charged in his notice of motion.

7.   You are instructed that whether or not J. W. Crowell in this case is responsible for damages inflicted by the alleged negligence of his son, Bruce Crowell, rests upon and must be determined by you upon the inquiry as to whether or not Bruce Crowell at the time of the accident was acting as agent or employee of his father, J. W. Crowell, and the mere fact that Bruce Crowell is the son of J. W. Crowell has no bearing upon that inquiry.   Liability cannot be cast upon J. W. Crowell because he owned the car or because his son, Bruce Crowell, was the driver on this occasion, but must depend upon whether or not at the time Bruce Crowell was driving the car as an employee of his father in the furtherance or performance of the business of J. W. Crowell or in the execution of the latter's orders or directions.   Unless you believe from the evidence that J. W. Crowell permitted his son to run said car when he knew or had reason to believe that he was not a safe person to run said car.

8.   If, therefore, you shall believe from the evidence that Bruce Crowell, at the time of inflicting the alleged injuries on the plaintiff, was on a frolic of his own and not engaged as employee or agent in the performance of J. W. Crowell's business, and at the time was using the car without J. W. Crowell's knowledge or consent, you shall find in favor of the defendant, J. W. Crowell.

9.   You are further instructed that the fact that the car which Bruce Crowell was driving on this occasion was owned by J. W. Crowell, and that the members of his family, including Bruce Crowell, were accustomed to drive it whenever they wished to do so is not sufficient to constitute Bruce

had a contract to carry rural mail, and that his son
Bruce Crowell carried the mail in a Ford car in the
mornings, and in the afternoons and at nights he was
employed by defendant to drive and was given charge
of defendant's Dodge car as a taxi.

Both the defendant and Bruce Crowell testified
that because he was not making any money in the
"jitney" business, defendant told his son that they
would not operate the "taxi" after December 31, 1924,
which was three days prior to the injury to plaintiff, and
that the relation of master and servant terminated on
December 31, 1924. However, one witness testified that
Bruce Crowell drove him home about 4 P. M. on
Saturday, January 3rd, the day of the accident and
collected a fare of .50c from him. He testified further
that the "taxi" sign was on the car at that time. An-
other witness testified that on Sunday, January 4, Bruce
Crowell was in the Dodge car, with the taxi sign dis-
played, on the regular taxi stand in Pulaski, and that

Crowell the agent of J. W. Crowell in this case nor to make him liable on
this ground for alleged damages done to John A. Duncan.

10. If you should believe from the evidence that Bruce Crowell at the
time of the accident was acting as agent of his father, the evidence of his al-
leged habit of occasional drinking is to be considered by you only in deter-
mining whether or not J. W. Crowell knew, or by the exercise of reasonable
care could have known, that he was on that account not a reasonably safe and
competent driver; and unless you shall believe from the evidence that Bruce
Crowell was on that account an unsafe and incompetent driver, and that
J. W. Crowell knew or by the exercise of reasonable diligence could have
known that he was, no liability can attach to J. W. Crowell on that ground.

11. If you shall believe from the evidence that at the time of the in-
jury to the plaintiff Bruce Crowell, though driving J. W. Crowell's car, was
not acting as the agent of J. W. Crowell, in the execution of orders given by
J. W. Crowell, or in the prosecution of the business of J. W. Crowell, but was
using the car for his own purposes and designs; the mere fact that Bruce
Crowell had up until January 1, 1925, been employed by J. W. Crowell to
drive the car as a taxi makes no difference in the case.   And even if you shall
believe that Bruce Crowell was so employed, or acting, on January 3, 1925,
at the time of the accident, the fact that Bruce Crowell may have been in
the habit of drinking liquor occasionally does not cut any figure in the case,
unless you shall believe the extent and character of his drinking constituted
him such a dangerous driver that it was incumbent on J. W. Crowell as a
reasonable man to see to it that the car be kept out of his possession abso-
lutely.

the defendant was present at the time witness got in
the car with Bruce, and while defendant was present,
they drove off together.  Several other witnesses testi-
fied that they had seen Bruce Crowell driving the
Dodge car with the taxi sign on it after January 1, 1925,
and one testified that he had seen him at the station
with the car.

Under these circumstances the testimony of the
defendant and his son that the relationship of master
and servant had terminated was not conclusive of the
question.   There was ample evidence to justify the
conclusion reached by the jury that Bruce Crowell was
still in the employ of defendant and in charge of his
taxi.   The jury were the sole judges of the credibility
of the witnesses and of the weight of the evidence.
The question of agency and of the credibility of the
witnesses was fairly submitted to the jury by the in-
structions, as reference thereto will disclose.

[5, 6] 2. The second inquiry, upon the first ground of
liability, presents a very close question.   The real in-
quiry is, was the question as to whether Bruce Crowell
was acting within the scope of his employment or
was he engaged in a frolic of his own, under the evi-
dence in this case, one to be determined by the Court,
or was it a question of fact, to be submitted to, and
determined by, the jury?   As this defense admits the
agency, proof of which primarily rested upon the
plaintiff, the burden was upon the defendant to show
that Bruce Crowell was not acting within the scope
of his employment.  The general rule is that the master
is liable for all tortious acts of the servant committed
by such servant while acting within the scope of his
employment.   When the relation of master and serv-
ant is established, and the master undertakes to
show that he comes within an exception to the general

rule, the burden of proving that he does so is upon the master. Thus, in *Barmore* v. *Vicksburg, So. & P. R. Co.*, 85 Miss. 426, 38 So. 210, 70 L. R. A. 628, 3 Ann. Cas. 594, the court said: "In order to escape liability, it devolves upon the master to prove that the servant had abandoned the duties of his employment, and gone about some purpose of the servant's own, in which the master's business was not concerned, and which was not incident to the employment for which the servant was hired. If the testimony leaves this question in doubt it must be submitted to the jury." Citing *Richie* v. *Waller*, 63 Conn. 157; 27 L. R. A. 161, 38 Am. S. Rep. 361, 28 Atl. 29. If there is no conflict in the facts, it is a question of law for the court. *Barmore* v. *Vicksburg, So. & P. R. Co., supra;* Berry on Automobiles (4th ed.), p. 1050. *Idem* sec. 1167, p. 1040.

[7] Where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority, the doubt will be resolved against the master because he set the servant in motion, at least to the extent of requiring the question to be submitted to the jury. 39 C. J. 1284, and cases cited.

[8-10] Under the facts in the instant case, viewed in the light of the authorities cited, we think the trial court did not err in submitting this question to the jury, and, if this is true, their verdict is conclusive. Viewing the evidence upon this point as upon a demurrer to the evidence, we have this situation. The defendant was the owner of a Dodge automobile which he kept for hire, and which he turned over to his son Bruce with authority, and in his discretion, to transact such business as he could and make return to him, employer and master. On the evening in question he went out upon the streets of Pulaski, where it was

his custom to seek business, within business hours, with the taxi sign prominently displayed, and later when driving at a reckless rate of speed in the streets of the town he ran into and injured the plaintiff cannot be denied; that in the absence of any evidence to the contrary, we have here presented by the plaintiff's proof, a perfect case of liability on the part of the master, and, as we have seen, the burden is upon the master, under such circumstances, to prove that the servant was not acting within the scope of his employment, and where the evidence leaves the question in doubt, it is for the jury to determine. To rebut the fair inferences from the foregoing facts which were distinctly established, and the presumption arising therefrom, and to meet the burden thus placed upon the defendant, Bruce Crowell testified that he took the car out of the garage where it had been left for repairs, without his employer's knowledge or consent, and for his own purposes. That he took one Pat............ ......................, who had some whiskey; that they together took two or three drinks apiece; that he went to a restaurant to get something to eat; that there he met a friend, Archie Linkous, who suggested that he had seen two girls up the street and proposed that they take the car, catch up with them, and take them home. This they undertook to do, and while proceeding along the street at a rapid rate of speed, admittedly illegal, ran into the plaintiff. He further stated that he did not know he had hit plaintiff; that he and Linkous did not overtake the girls, and that he was arrested very shortly after the accident and was told he had injured someone. He was corroborated in this by Linkous. There was also corroboration of his statement, that, shortly before the accident he was with Pat........................................, and at the restaurant. Does

the testimony of these witnesses, as a matter of law, rebut the inferences growing out of the facts proven, independently of this testimony? The jury are the judges of the credibility of the witnesses, and usually, when a *prima facie* case has been made out by the plaintiff the question as to whether it has been rebutted is for the jury.

As was held in *Sina* v. *Carlson*, 120 Minn. 283, 139 N. W. 601, testimony of both the owner and driver of a team that the driver was acting without authority from the owner is not conclusive, though there is no other direct evidence on that subject. Facts and circumstances may overcome the direct testimony.

It is contended that this case is on all fours with, and is determined by, the decision in *Kidd* v. *DeWitt, Jr.*, 128 Va. 438, 105 S. E. 124. In that case Saunders, J., speaking for the court, held that the servant was, as a matter of law, engaged in a frolic of his own, and that the master was not liable. But that was a case in which a private chauffeur was given specific directions by his employer to take designated parties from their home in the city of Lynchburg to a designated point in Amherst county and to bring them back to Lynchburg. He carried the parties to the point designated in Amherst county, and then proceeded to take a friend of his own on a joy ride, and while so doing ran into and damaged an automobile belonging to the plaintiff, Kidd. These facts were undisputed and there were no circumstances connected with the case in any way at variance with them. The cases are easily distinguishable.

In the instant case the chauffeur was not a private chauffeur acting under specific orders. As heretofore stated he was employed as driver of a "taxi," with authority, necessarily, to take charge of the automobile,

and to secure and transact such business as he could, and account to the master. He was necessarily also vested with discretion in the employment of the auto-mobile for this purpose, and he was on the streets of Pulaski, where his duties required him to be in busi-ness hours, with the taxi sign displayed on the car.

In *Mulvehill* v. *Bates*, 31 Minn. 364, 117 N. W. 959, 47 Am. Rep. 796, the court held as a matter of law that where an owner of an express wagon employed a driver with authority to secure and transact such business as he could, and the driver, having delivered a trunk, on his return got a load of poles for himself and while carrying them home on the wagon negligently ran over and injured the plaintiff's child, the owner was liable.

In discussing the case the court said: "Counsel for appellant   *   *   *   cites a number of cases   *   *   * in which it is held that where the driver of the master's vehicle turns wholly aside from the master's employ-ment and engages in an independent journey, wholly foreign to his employment and for a purpose exclusively his own, the master is not liable for his acts. We have had occasion   *   *   *   to consider and endorse the doctrine of these cases. But this class of cases is clearly distinguishable from the present. There the servant had specific orders as to the mode of dealing with the vehicle and was obliged to attend to the specific errand on which he was sent and then return to his master. If under these circumstances he employed the vehicle on some purpose wholly independent of his orders, of course he was not within the scope of his employment and the master is not liable. But here the wagon was entrusted, generally, to the driver, to be used entirely at his discretion."

The distinction we have particularly referred to,

which arises out of the difference in the authority with which a servant is vested, has been recognized in a number of decisions. See *Barmore* v. *Vicksburg, So. & P. R. Co., supra; Noblesville and Eagletown Gravel Road Co.* v. *Gause*, 76 Ind. 142, 40 Am. R. 224; 39 C. J. p. 1303, Note (b).

[11-13] We are not referring to these cases with entire approval, at least to the extent of endorsing anything in them which has a tendency to impair the force of the well established rules governing the liability of masters for the torts of servants, if they may be construed as having such tendency, but we do wish to make it clear that where discretion is vested in a servant as to the handling of any instrumentality placed in his hands by the master, this is a weighty circumstance for the consideration of a jury in determining whether or not the master is liable for an injury inflicted by such servant while in charge of such instrumentality—that is, whether the servant is acting within the scope of his employment. Especially is this true under the circumstances of this case, where the servant was driving the automobile within business hours, in the usual field of his operations and with the taxi sign displayed. We further hold that when such a driver is in charge of his taxi in business hours within the territory of his employment with his taxi sign displayed, the mere fact that he has a friend in the taxi with him and he and his friend testify that they are pursuing their own pleasure, is not conclusive of the question as a matter of law. At best, even if they are to be believed, the question would still be one of fact for the jury as to whether the chauffeur was not combining his pleasure or business with that of his master's. This does not relieve the master of liability. 39 C. J. p. 1303, 1501, and cases cited, Notes 72 and 73. The

jury had a right to believe from the facts and circumstances of this case that Bruce Crowell was out on the streets with his employer's taxi looking for business, as is the custom with taxi drivers, and that while so doing he combined with this duty his own pleasure or business. Instruction No. 1 complained of by defendant in effect told the jury this, and was not erroneous. It may well have been made clearer, but as given, it was even more favorable to the defendant than he was entitled to. It did not make any difference whether the defendant knew Bruce Crowell transported his friends at times free of charge or not. Whether he accounted to the master, or charged for all the fares he transported, was a matter between them and was not a matter of concern for the court and jury. *Mulvehill* v. *Bates, supra.*

[14] It is also clear from what has been said that instruction No. 6 complained of correctly propounded the law. *Barmore* v. *Vicksburg, So. & P. R. Co., supra.*

We conclude, that on the first branch of the case there has been a fair trial of the issue without harmful error, and that the verdict of the trial court cannot be disturbed on this ground.

A. Upon the second branch of the case, the inquiry resolves itself into a consideration of whether instructions No. 2 and No. 4 propound a correct proposition of law, and incidentally, of course, whether there is evidence to support these instructions. The latter inquiry presents no difficulties, we think.

[15] The question of the relationship of master and servant is not considered in the instructions under consideration. The hypothetical case upon which the instructions are based rests upon the following facts, which they submit to the jury to say whether they are established by the evidence or not, viz: That the plaintiff

was injured as alleged; that the injuries were caused by the negligent act of Bruce Crowell; that the negligent and reckless manner in which Bruce Crowell was driving the automobile was because he was under the influence of intoxicants at the time. Sufficient evidence has been heretofore referred to to clearly establish every proposition stated. The instruction then proceeds, if the jury believes from the evidence that Bruce Crowell was in the habit of getting under the influence of intoxicants for some time prior to the accident, *and* that his father (the defendant) knew or had reasonable cause to know of the habits of his son, etc., he is liable. The evidence on the first proposition justified the conclusion that Bruce Crowell's habits were very intemperate.

[16, 17] King Hall testified that he had known Bruce Crowell for several years, and had seen him drinking, but not disorderly. T. P. Crockett, a deputy sheriff, said Bruce Crowell had the reputation of a drinking man. Had not seen him drunk, but had arrested him for transporting nearly a gallon of whiskey in an automobile; didn't know whether it was used as a jitney or not, and thought he was drinking at the time.

E. W. Calfee, mayor of the town of Pulaski, testified that Bruce Crowell's reputation was that he would drink. W. T. Crowder, a police officer, testified that Bruce Crowell "drinks some." J. C. Cooper testified that Bruce Crowell's reputation in the town of Pulaski for liquor drinking was bad, had never arrested him for being drunk, though on one occasion saw him drunk walking along the sidewalk and asked some friends of his to take him home. Roy Summers, a deputy sheriff, testified that Bruce Crowell's reputation for drinking was bad. Bruce Crowell admits himself that he had taken two or three drinks on the evening

of the accident in which the plaintiff was injured, and his license to drive an automobile was revoked for this reason. Thus it is clearly established that he was much given to drink, and, while a number of witnesses testified that he was a good and careful driver, any man who indulges in the use of intoxicants is a potential menace to the public safety as an automobile driver. It is commonly known that one who is most competent and careful as an operator of an automobile when perfectly sober, becomes incompetent and reckless after indulgence in one or two drinks. So unfailingly is this true that one who is given to drinking intoxicating liquor must be regarded as an unsafe and a potentially incompetent and dangerous driver, and the owner of an automobile who knows of such habits and entrusts it to such a driver may be liable for injuries to third persons which follow.

In Huddy on Automobiles, 5th ed. section 292, the author says: "If the owner of an automobile knowingly entrusts it to one who is incompetent, he may be liable for ensuing injuries."

In Berry on Automobiles, 4th ed. section 1144, p. 1022, it is said: "Intrusting automobile to incompetent person. Aside from the relation of master and servant, the owner of an automobile may be rendered liable for injuries inflicted by its operation by one whom he has permitted to drive the same on the ground that such person, by reason of his want of age or experience, or his physical or mental condition, or his known habit of recklessness, is incompetent to safely operate the machine."

In Bailey on Personal Injuries (Master and Servant), 2nd ed. section 340, p. 890, we find this: "What constitutes incompetency * * * * Habit of intoxication * * * * The habit of intoxication is one

of the most frequent causes that renders otherwise competent servants incompetent. Its prevalence suggests that it may exist among formerly prudent and even temperate men, and therefore it may not always be said it ought not to be, or was not, anticipated. It counteracts skill. It transforms prudence and caution into rashness and recklessness * * *. Habitual drinking to excess renders a person incompetent to perform services in their nature hazardous, and where other persons may be placed in peril by reason thereof, such habit may be to such an extent as to be sufficient to establish incompetency as matter of fact, as well as to render him unfit for the position even in his sober moments."

See also *Parker* v. *Wilson*, 179 Ala. 361, 43 L. R. A. (N. S.) 87, 60 So. 151; *Elliott* v. *Harding*, 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128; *Gardiner* v. *Solomon*, 200 Ala. 115, 75 S. 621, L. R. A. 1917, F. 380.

In the latter case it was said that: "The owner of an automobile is liable for injuries inflicted on a pedestrian by his adult son in the use of the machine under circumstances where the doctrine of *respondeat superior* would not apply, if the son was, to the knowledge of the owner, incompetent to handle the machine with safety."

And in the course of the opinion it was said: "While automobiles are not inherently regarded as dangerous instrumentalities, and the owner thereof is not responsible for the negligent use of same, except upon the theory of the doctrine of *respondeat superior*, yet there is an exception if he intrusts it to one, though not an agent or servant, who is so incompetent as to the handling of same as to convert it into a dangerous

instrumentality, and the incompetency is known to the owner when permitting the use of the vehicle."

[18] The cases refer chiefly to incompetence of persons entrusted by owners to drive their automobiles, but the habit of drink produces the most dangerous sort of incompetence, and the owner who knows of the habit of drink in one he permits to drive his automobile at will, assumes the risk of recklessness and incompetence on the part of such driver just as fully as if such driver was incompetent because of lack of experience or for any other cause, and permitted him to drive his car knowing he was incompetent.

[19] The fact is that drinking was the cause of the reckless driving which resulted in the injury to plaintiff. The father admits he knew his son drank. He knew what was more than liable to happen when a man who drinks is at the wheel of an automobile. He was put on inquiry at least and, if he did not know, he ought to have known.

Incompetence, recklessness and accident are so universally the sequel of drinking that an owner of an automobile is put on notice of what is likely to occur if he does not take active steps to prevent anyone addicted to drinking from driving it. If he fails in the performance of this duty he should suffer the consequences of his neglect.

[20] B. In addition, the jury, by their verdict, found that the defendant knew, or had reasonable cause to know, that his son was in the habit of getting under the influence of intoxicants. There was ample evidence to support this conclusion. The defendant admitted he knew his son drank intoxicants. He knew he had been arrested for transporting ardent spirits, and yet he admits that when the automobile was not otherwise engaged he permitted his son to use it at will.

We think, therefore, that upon the second ground upon which the plaintiff seeks to hold the defendant liable there is ample evidence to support the verdict of the jury.

[21] It is contended that instruction 2 is erroneous because it is in conflict with instructions 10 and 11. As we have seen, however, instruction No. 2 correctly propounded the law applicable to the facts of the hypothetical case stated therein, and all the facts necessary to a recovery were stated. If instructions 10 and 11 are in conflict with instruction 2, they are also in conflict with the conclusion we have reached on this branch of the case, and were more favorable to the defendant than he was entitled to.

It is contended that it was error on the part of the court to refuse instruction No. 12, asked for by the defendant. The instruction was as follows: "If you shall believe from the evidence that Bruce Crowell, at the time of injuring the plaintiff, was going with Linkous on a trip which he and Linkous had arranged for between themselves for designs of their own, and for their own pleasure, not connected with the business of J. W. Crowell, the said Bruce Crowell was not at that time acting as agent of J. W. Crowell, nor in the scope of his employment.

[22] This instruction correctly propounds the law on the first branch of the case, but the instructions given, eleven in number, fully covered the case, including the proposition set out in this instruction, both from the standpoint of the plaintiff and the defendant (see especially in this connection instruction No. 8), and it was not error to refuse No. 12.

[23] It is contended that the court erred in not permitting the defendant to answer the following question: "Q. You have stated that your son Bruce Crowell

assisted you in carrying the United States mail in an automobile as assistant mail carrier, and did most of this work from April on through the year 1924. Did you at any time during that period receive any complaint from the post office authorities about Bruce Crowell's conduct in carrying the mail?" The answer of the witness, if he had been permitted to answer the question, it is alleged, would have been: "He had heard no complaints from the post office authorities in respect to the conduct of his son, Bruce Crowell, in the performance of his duty as assistant mail carrier." There was no error in the court's action in this matter.

For the reasons given, upon the whole case, we are of opinion that the evidence in this case is sufficient to support the verdict, either upon the ground of *"respondeat superior,"* or upon the ground of negligence of the owner of the automobile in permitting one given to drinking intoxicants, and, because of this, potentially an incompetent and reckless driver, to use his automobile without restriction, and in not taking active measures to prevent such a person from using his automobile at all. The judgment should be affirmed.

*Affirmed.*