JOHN T. CAREY *v.* HONOLULU IRON WORKS COMPANY, AN HAWAIIAN CORPORATION.

No. 1805.

ARGUED MAY 15, 1928.        DECIDED MAY 23, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

458

OPINION OF THE COURT BY BANKS, J.
(Perry, C. J., dissenting.)

The plaintiff sued the defendant for damages on account of personal injuries received by him and recovered judgment in the sum of $3000. The defendant has brought the case here on a bill of exceptions. On the 14th day of June, 1927, about four o'clock in the afternoon, the plaintiff, while standing on the sidewalk on Alakea street in the city of Honolulu, was knocked down and injured by an automobile truck which was the property of the defendant and which was at the time being driven by one Kuhns. There is no denial that the plaintiff's injuries were caused solely by the negligence of Kuhns in operating the truck. Kuhns was employed by the defendant as a truck driver and it was his duty to deliver the defendant's goods and wares to its various customers throughout the city. It was also his duty when his daily deliveries were completed to return the truck to the defendant's garage on Marine street. A short time before the accident Kuhns had made his last delivery for the day at the pumping station on Beretania street. He then drove makai on Alapai street to King street, a distance of two blocks. There he turned Ewa and drove along King street to where it is intersected by Alakea street. Up to this point it is not disputed that Kuhns was going in the direction of defendant's garage where the truck was to be left nor is there any doubt that up to this point he was

engaged solely in the defendant's business. When he reached the intersection of King and Alakea streets he turned mauka on Alakea street (a direction at right angles to that in which he was going and opposite to that in which was the defendant's garage) for the purpose of reaching the Union Trust Company building where he wished to stop in order to procure from the Honolulu Finance & Thrift Company (which had its office there) an extension of a personal loan. This building is four hundred feet from the point where Kuhns turned into Alakea street. When he was about twenty feet from the front of the building he drove the truck so close to the sidewalk where the plaintiff was standing that the plaintiff was knocked down and injured. Kuhns, who seems not to have known at the time that the plaintiff had been struck, brought the truck to a stop in front of the building and went inside and transacted his business. When this was accomplished he resumed his journey continuing mauka along Alakea street until he reached Hotel street (the first intersecting street) where he turned Ewa and proceeded to the defendant's garage. Kuhns, who had been in the defendant's employ for several years, had never been instructed by the defendant to take any specific route in returning the truck he was operating to the garage and, by implication at least, this was left entirely to Kuhns' own choice.

It was contended by the defendant in the court below and is contended here that when Kuhns turned from King into Alakea street for the purpose of going to the Union Trust Company building to transact his own business he thereby, as a matter of law, completely abandoned the defendant's business and was therefore wholly engaged in his own business when the accident occurred. If this thesis is sound the defendant is not

liable in this action. The court below thought it unsound and refused instructions requested by the defendant directing the jury to return a verdict in its behalf. At the plaintiff's request instructions were given in which was submitted to the determination of the jury the question of whether Kuhns had at the time of the accident completely abandoned the defendant's business and was engaged solely in business of his own. The jury was further instructed at plaintiff's request that if it believed Kuhns had completely abandoned the defendant's business the verdict should be for the defendant. At most the submission of the question of abandonment to the jury was under the undisputed facts all the defendant was entitled to.

Kuhns had not, when the accident occurred, completed the duty he owed the defendant for that day. It was just as much his duty to return the truck to the defendant's garage on Marine street after delivering the defendant's goods as it was to deliver the goods. The duty to deliver the goods had been performed but the duty to return the truck to the garage remained unperformed. In the performance of this latter duty the choice of route was left entirely to Kuhns. If, instead of being injured on Alakea street, the plaintiff had been injured on King street before Kuhns turned into Alakea street there would be no doubt that Kuhns' negligence would be imputable to the defendant on the ground that his act of negligence was committed while in the performance of his duty to the defendant. Does the mere fact that Kuhns, in order to transact some business of his own, chose a slightly indirect route over which to perform his duty to the defendant show, as a matter of law, such a complete, though temporary, abandonment of the duties of his employment as to absolve the defendant from liability? An affirmative answer to this

question would be contrary to the great weight of judicial precedent and would open a wide door to fraudulent collusion between the servant and the master through which the latter could find an easy escape.

A leading case on this subject is *Ritchie* v. *Waller*, 63 Conn. 155. The essential facts in that case were as follows: The defendant was the owner of a farm at a place called Trumbull. He had for sometime been accustomed to get manure from a brewery at Bridgeport. On the day of the injuries complained of the defendant had sent his servant to Bridgeport to get a load of manure. After getting the manure the servant started on his return journey to Trumbull but instead of continuing along the most direct route he made a detour of some distance in order to go to a shoemaker's shop where he desired to have his shoes repaired. He left the team of mules standing in front of the shop while he went inside to see to his shoes. The mules trotted away and the wagon to which they were attached collided with the plaintiff's wagon to the plaintiff's damage. There was a verdict and judgment for the plaintiff, which on appeal was affirmed. In its opinion the supreme court said (p. 165) : "In making the detour Blackwell was still in charge of his master's team, though on a roundabout way home, carting manure to his master's farm. That was his main purpose and object throughout the entire transaction. In the language of the case last cited, even if the motive was some purpose of his own, he was still about his usual employment, although pursuing it in a way and manner to subserve such purpose also."

In *Gorry* v. *Boehmer Coal Co.*, 241 S. W. (Mo.) 976, 978, the servant was employed by the defendant as a collector and solicitor and in the performance of his duties drove a Ford car which was the property of the

defendant. After the completion of his day's work it was his duty to return the car to a garage. On the evening of a certain day while he was doing this he saw a lady friend who lived in another part of the town and in a direction away from the garage. He offered to take her home and while doing so, by the careless operation of the car injured the plaintiff. In its opinion affirming the judgment that was rendered in the plaintiff's behalf the court said: "In the case at bar, the driver of the automobile was not a chauffeur. He was furnished an automobile by the defendant to carry on his business of collecting and soliciting for the defendant in practically his own way. The evidence does not disclose that he used any particular route in going home at night, or was required or expected to return at any particular time. He did not get through with his day's work at any particular time or place, and under such circumstances, and the facts as heretofore stated, the mere fact that he was traveling an indirect route for the purpose of taking this lady to her home, instead of going direct to the garage, was a mere incident, and it should not be held, as a matter of law, that he had departed from the scope of his employment."

In *D'Aleria* v. *Shirey*, 286 Fed. 523, while the facts were somewhat different from those in the instant case, the circuit court of appeals, ninth circuit, laid down the following rule: "If a servant, while about his master's business, makes a deviation of a few blocks for ends of his own, the master is nevertheless liable." The same rule is adopted in the following cases: *DeBello* v. *Reep & Blackford*, 127 Atl. (N. J.) 522; *Fostrom* v. *Grossman*, 161 Minn. 440; *Orris* v. *Tolerton & Warfield Co.*, 207 N. W. (Iowa) 365; *Western Pacific R. R. Co.* v. *Industrial Accident Commission*, 193 Cal. 413; *Drakenberg* v.

*Knight,* 178 Wis. 386; *Crowell* v. *Duncan,* 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Eckel* v. *Richter,* 191 Wis. 409, 211 N. W. 158.

We think the defendant's exceptions relating to this phase of the case should not be sustained.

The remaining exception raises the question as to whether the verdict was excessive. This exception likewise cannot be sustained. The evidence tended to show that the plaintiff suffered actual damages in the sum of $740. His injuries were of such a nature as to cause him a great deal of pain and suffering and kept him confined most of the time at his home for a period of three weeks. He testified at the trial that he was still suffering. Under these circumstances we cannot say that he recovered a larger amount than he was entitled to.

The exceptions are overruled.

*J. B. Poindexter* and *W. B. Pittman* (also on the brief) for plaintiff.

*J. B. Lightfoot* (also on the briefs) for defendant.

### DISSENTING OPINION OF PERRY, C. J.

I find myself unable to join in the view of the majority and shall state briefly the reasons for my dissent.

The facts in this case, upon the point now in controversy, are entirely undisputed and the question therefore becomes purely one of law for the court. It is true that Kuhns was an employee of the defendant and that his regular work was to drive a truck for the purpose of delivering hardware to customers and of bringing in other hardware to the place of the defendant's foundry. It is also true that on the day of the accident he was engaged as such employee in making deliveries for the defendant. He had made a delivery of merchandise at the pumping station at the corner of Bere-

tania and Alapai streets in this city. The next duty that he owed to his employer was to return the truck to the garage, situated on Marine street just west of Nuuanu street. Marine street is practically an extension of Merchant street. It is true, also, that the employee in the performance of his duty is to be regarded as having had the option of a choice of routes from the pumping station to the garage. He chose to drive down Alapai street to King and westward along King. When he reached Alakea street, instead of continuing westward on King street, he turned at right angles to the right, drove up Alakea street for about 400 feet and stopped in front of the Union Trust Company building, near the curb. He so turned mauka, continued to the Union Trust Company building and there stopped, all for the sole purpose of attending to private business of his own, to-wit, for the purpose of obtaining from the Honolulu Finance & Thrift Company, whose office was in that building, an extension of the time of a loan from that company to him personally. In approaching the curb and coming to a stop the accident occurred which resulted in the injuries complained of in this action. Upon leaving the trust company building Kuhns drove the truck mauka on Alakea street and then westward along Hotel to Nuuanu street, down Nuuanu street to King street and thence by the shortest route to the defendant's garage. The evidence upon which this statement of facts is based was entirely undisputed. It was not susceptible of any other or different finding, either as to the route taken or as to the purposes moving the driver. It is not even a case of evidence undisputed as to certain facts but susceptible of conflicting inferences from those facts. There is no room to resort in this instance to inferences. The evidence is express, clear and uncontradicted that the sole purpose of the driver

in turning mauka into Alakea and going to the Union Trust Company building and in stopping there was to attend to his own private business, wholly disconnected from the business of his employer. Kuhns' testimony was to this effect and was corroborated by that of A. H. Vierra, the office manager of the Honolulu Finance & Thrift Company, who testified that the only business done on that occasion by Kuhns with the company was with relation to the extension of the time of his personal note. One other witness testified that on that occasion he saw Kuhns sitting at Vierra's desk in the office of the thrift company. It has not been suggested in this court that there was any reason for disbelieving the testimony of Kuhns and Vierra or for believing that in truth and in fact Kuhns, in entering the Union Trust Company building, did so to transact business for the defendant. What Kuhns' purpose was in entering the Union Trust Company building was not submitted to the jury as a controlling issue. The case was left to it by the presiding judge, apparently upon the theory that from all of the evidence the jury could find either way on the question of whether, in turning up Alakea street and going to the Union Trust Company building, the driver had temporarily abandoned his master's business and was attending solely to his own business.

Under the circumstances, it seems to me that the defendant is not liable for the negligence of its servant. The rule has been repeatedly declared, apparently without dissent, that while a master is liable for the negligence of his servant while the latter is engaged within the scope of his employment, the master is not liable for the negligence of the servant if at the time the servant had turned aside upon and was solely engaged in business or pleasure of

466

his own. It seems to be stated, it is true, with equal unanimity that if at the time the servant was engaged in the double purpose of performing his master's business and of performing his own, the master is liable. While there is no difficulty in extracting these rules from the books, there seems to be endless confusion in the way in which they have been applied to varying facts and circumstances. Many adjudged cases can be cited in support of the application adopted by the majority of this court in the present instance, just as many adjudged cases can be cited in favor of the application which, in my judgment, ought to be made.

There are many cases which seem to turn, one way or the other, upon the subject of deviation from route. Such a deviation, however, as it seems to me, is not the ultimate fact to be sought in any given case, but is simply a fact which tends to throw light, together with or in the absence of other circumstances, upon the ultimate issue of whether, at the time of the accident, the servant was engaged purely in his own business or wholly or partly in the business of the master. A resort to the question of deviation is very often made necessary by the lack or paucity of other evidence or circumstances indicating whether at the time the servant was engaged in his own business or in the master's business, or in both, but in the case at bar there is no such lack of evidence, the evidence being all express and clearly to the effect that at the time the servant was engaged purely in the pursuit of his own personal business, and therefore there is no need to resort to any issue of deviation. It seems to me that the distance that the servant went out of his way in order to attend to his own business alone is quite immaterial. He may go a mile or ten miles or he may go only 400 feet; but once it is clearly established that the turning aside was purely for

his own business, a distance of 400 feet is just as effective as a distance of ten miles in exonerating the master from liability.

It is true that it was the servant's duty, after he had delivered the goods at the pumping station, to return the truck to the garage and that that duty was as real after he reached the corner of King and Alakea streets as it was when he departed from the pumping station. To my mind, however, he was not performing that duty either in whole or in part when he went from that corner to the Union Trust Company building. That portion of the route he travelled purely in his own interests and not for any purposes or business of his master. For the time being, he abandoned his master's business. A different question might arise if the accident had happened, not before he stopped at the Union Trust Company building, but after he resumed his journey, and even though in resuming his journey he continued mauka on Alakea street and then travelled westward on Hotel street. Under these hypothetical circumstances it has often been held that the master is liable. Probably, also, there are cases to the contrary.

If, instead of turning at right angles up Alakea street, Kuhns had turned back on King street and had driven half a block to the new offices of the Hawaiian Electric Company, purely for his own private purposes, and in so doing had met with the same accident, can there be any doubt that the master would not be liable? Or if, instead of going up Alakea street only four hundred feet, he had proceeded up that street and thence along Emma street (which is in reality a continuation of Alakea street) to its junction with School street, a total distance of about half a mile, all purely for the purpose of attending to the extension of his personal note, can there be any doubt that the master would not

be liable for the results of an accident occurring near the corner of Emma and School streets before the driver had attended to his personal business? It seems to me to be clear that in neither of these hypothetical cases would the master be liable. The turning at right angles to the right up Alakea street was just as clearly and emphatically for the purely personal purposes of the driver as the turning completely around on King street in the first supposed case would have been, or as the driving to the head of Emma street in the second supposed case would have been. I can see no distinction in principle.

In my opinion, the defendant's request for a directed verdict should have been granted, the verdict in favor of the plaintiff ought to be set aside and a new trial should be granted.