John T. **CORRIGAN,** Guardian of Daughter, Maura L. Corrigan, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

C.L. **DIMOS,** Personal Representative of the Estate of Michael T. McDonnell, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. Nos. 84–0787–A, 84–0675–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 18, 1984.

John L. McGann, Arlington, Va., for Corrigan.

William G. Schaffer, Schaffer, Brown & Cooper, Washington, D.C., Bruce B. HcHale, Rosenbleet & McHale, Alexandria, Va., for Dimos.

Paula M. Potoczak, Asst. U.S. Atty., Alexandria, Va., for U.S.A.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This consolidated action is before the Court on defendant's motion for summary judgment with respect to plaintiff Corrigan, and on defendant's motion to dismiss with respect to plaintiff Dimos. In considering the defendant's motions, the Court must treat the allegations of the plaintiffs as either admitted or not genuinely in issue. *Meltzer v. Atlantic Research Corp.,* 330 F.2d 946 (4th Cir.1964), *cert. denied, Scurlock v. Meltzer,* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964).

FACTS: On the night of December 19, 1981, Patrick Patterson, a member of the U.S. Army, went with a friend to a base club on the Fort Myers Army Base for a few drinks. The base club was a popular place for military personnel on weekends, since drinks are sold to them there at a discount price. While at the club, Patterson allegedly consumed a large quantity of alcohol, including some hard liquor, even though he was only 19 years old; the minimum age for purchasing or consuming hard liquor in Virginia is 21. VA.CODE § 4–62 (1983).

After consuming a large quantity of alcohol at the club, Patterson got into a car and began to drive. At 12:15 a.m., Patterson hit a motor vehicle while approaching a stop light a few miles from the club. While attempting to leave the scene of that accident, Patterson hit a second vehicle, and then drove off. Finally, Patterson drove through a stop sign and collided with a car driven by a Michael McDonnell; Maura Corrigan was a passenger in this car. McDonnell was killed in the accident, and Maura Corrigan is still in the hospital in a coma. After the third accident, Patterson's blood-alcohol level was measured at .26, well above the legal maximum of .10; he was subsequently convicted of involuntary manslaughter and sentenced to one year in prison.

The administrator of Michael McDonnell's estate, C.L. Dimos, and Maura Corrigan's guardian, John T. Corrigan, have brought this action against the United States contending that agents of the United States were negligent in serving alcohol to Patterson when he was both under age and obviously intoxicated, and that this negligence was the proximate cause of the accident. The United States has moved to dismiss the Dimos action, and has moved for summary judgment against Corrigan. In support of both of its motions, the United States contends that a tavern owner cannot be held civilly liable under Virginia law to innocent victims of an accident caused by the reckless, drunken driving of an under-aged, intoxicated tavern patron.

DISCUSSION: Since the plaintiffs' case against the United States has been brought under the Federal Torts Claims Act, the government's liability is determined in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). All of the alleged acts of negligence, the accident, and the ensuing injuries took place in Virginia, and therefore Virginia law controls the substantive elements of the litigation.

Virginia law with respect to a tavern owner's vicarious liability for torts committed by an intoxicated person is unclear. There is no "Dram Shop" or "Civil Liability" statute which specifically imposes any civil liability for the sale of intoxicating beverages, and Virginia courts have never been called on to determine the liability of a tavern owner under the common law for injuries caused by persons to whom the tavern negligently served alcohol. Since there is no state statute or state court ruling directly on point, this Court must try and determine what the Supreme Court of Virginia would do if confronted with the same question. Guidance in such situations comes from analogous Virginia state court decisions, decisions in other jurisdictions, relevant statutes, and scholarly treatments of the law such as law review articles. *Moore's Federal Practice*, § 0.309, p. 3119–3124 (citations and footnotes omitted).

While the Virginia legislature has not specifically imposed civil liability on tavern owners for injuries arising out of the sale of alcoholic beverages, it has recognized the inherent unreasonableness of this defendant's alleged conduct in VA.CODE § 4–62. Under § 4–62, a tavern owner who sells an alcoholic beverage to an underaged or intoxicated individual is guilty of a misdemeanor. Even though this statute, by itself or in combination with any other statute, does not create a private cause of action, *see Ward v. Conner*, 495 F.Supp. 434, *rev'd on other grounds*, 657 F.2d 45 (4th Cir.1981), *cert. denied* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982), it does serve to define a minimum standard of care applicable to those who serve alcoholic beverages. Virginia courts have consistently ruled that violation of a statute constitutes negligence per se, and will support a recovery for damages that are the proximate cause of the injury so long as the injured person is a member of the class for whose benefit the legislation was enacted. *Smith v. Virginia Transit Co.*, 206 Va. 951, 147 S.E.2d 110 (1966).

In the instant action, plaintiffs allege that the United States violated Virginia law by serving alcohol to an intoxicated, underaged person. First, enactments such as VA.CODE § 4–62 are clearly intended to protect not only the intoxicated person himself, but also to protect members of the general public, especially persons on the highway who might encounter intoxicated drivers. *See, e.g., Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968). Therefore, plaintiffs here are certainly members of the class for whose benefit the legislation was enacted.

Moreover, while plaintiff's violation of § 4–62 may not have been the *immediate* cause of the plaintiffs' injuries, Virginia has never embraced the notion that proximate cause means the immediate cause. In a case analogous to the present action, *Crowell v. Duncan*, 145 Va. 489, 134 S.E. 576 (1926), the Supreme Court of Virginia held that the owner of an automobile could be held liable to a third party for injuries arising out of the entrustment of the automobile to an intoxicated person. Recognizing that death and destruction on the highway is the foreseeable result when drinking is combined with driving, the court stated:

> Incompetence, recklessness, and accident are so universally the sequel of drinking that an owner of an automobile is put on notice of what is likely to occur if he does not take active steps to prevent any one addicted to drinking from driving it. If he fails in the performance of this duty, he should suffer the consequences of his neglect. 134 S.E. at 581.

The increased speed and power of automobiles, the greater likelihood that patrons will drive after leaving a bar, and the stag-

gering injuries and costs to society of alcohol related crashes in the past decade only serve to reinforce the *Crowell* court's farsighted conclusion. Given the mandate of state law and the prevalence of death and damage caused by drunk drivers, tavern owners should be aware of the dangers of serving drinks to minors or to intoxicated patrons. Indeed, the tavern owner here, the United States Army, indicated an awareness of these dangers in its own regulations, which state that under-aged and intoxicated patrons should not be served, and that intoxicated patrons should not be permitted to leave the tavern and drive. Army Regulation 210–65, para. 2.

 This Court is confident that a Virginia court would recognize that the plaintiffs here have stated a common law cause of action in negligence against the United States. In light of VA.CODE § 4–62 and the Virginia Supreme Court's pronouncement in *Crowell,* this Court holds that, under Virginia law, tavern owners have a duty to refrain from selling alcohol to those individuals who, by industry standards, common experience or actual knowledge, the tavern owner knows or should know are likely to represent an unreasonable risk of harm to others.

In spite of § 4–62 and the decision in *Crowell,* the defendant argues forcefully that a Virginia court would still decline to impose civil liability upon a seller of intoxicating beverages under these circumstances. Such a position, however, would be at odds with the vast majority of reported decisions and the clear trend nationally in favor of recognizing liability. Currently, 21 states have imposed liability under the common law on vendors of intoxicating beverages for the injuries caused by persons purchasing such beverages while under-age or intoxicated. An additional twenty states have imposed such liability by enacting "Dram Shop" statutes; in eight of the states which impose such liability by statute, the courts have also recognized a common law cause of action. In the past ten years alone fifteen states have recognized a common law action in negligence against tavern owners in these circumstances. This Court cannot conclude that a Virginia court would refuse to impose liability here in the face of such a pronounced trend and against the great weight of case law in other jurisdictions.

Virginia courts have never hesitated to expand the common law in the absence of specific legislative guidance. For example, the Virginia Supreme Court was willing to recognize the rule of strict liability in blasting operations so as to protect innocent third party victims from the use of dangerous instrumentalities by others, *M.W. Worley Construction Co. v. Hungerford, Inc.,* 215 Va. 377, 210 S.E.2d 161 (1974), and it was quick to recognize a cause of action for the intentional infliction of emotional distress. *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145 (1974). The failure of the Virginia legislature to affirmatively enact Dram Shop legislation can only be an expression of its confidence that the enlightened Virginia state courts would join the majority of other jurisdictions in imposing common law liability upon tavern owners in these circumstances.