# Wytheville

SYDNOR AND HUNDLEY, INCORPORATED, v. PAGE E. BONIFANT.

June 16, 1932.

Present, Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Sinnott, May & Leaman,* for the plaintiff in error.

*David Meade White,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This action was brought by Mrs. Page E. Bonifant (here-inafter designated as plaintiff) against Sydnor and Hundley, Incorporated (hereinafter designated as defendant), to recover damages for personal injuries caused by the negligent operation of an automobile truck belonging to the defendant. There was a verdict and judgment in plaintiff's favor for $2,000.00 and defendant thereupon obtained this writ of error.

The case grows out of the following undisputed facts:

The defendant, at the time of the accident, was engaged in the retail furniture business at the corner of Seventh and Grace streets in the city of Richmond. In connection with its business it maintained a Ford automobile truck, which was kept in defendant's garage adjoining its store. It had in its employ one Sydney L. Edwards whose duties were, when so directed by his employer, to go out to make measurements and hang draperies for its customers; and the truck was entrusted to and used by him for that purpose. His working hours were from 8 A. M. to 5 P. M., and when he was sent out to fill the various orders for the day, he would go from place to place at his discretion. He had a key to the garage where the truck was kept, but was explicitly instructed to use it only while engaged in the business of his employer, and when he had completed his day's work to return it to the garage and allow it to remain there until the following day.

On the day of the accident, September 8, 1930, Edwards

was sent out to execute the orders of several customers residing in the western section of the city and Westhampton, on the north side of the James river. After completing the work he was supposed to do, without returning to the store or seeing any of his superiors, Edwards drove the truck across the river into Chesterfield county, where he procured and drank a sufficient quantity of whiskey to become intoxicated. He then started back to Richmond, and when he had reached a point on the Midlothian turnpike, in Chesterfield county, about two miles from the city limits, and five or six miles from the defendant's place of business, about 5:30 P. M., he negligently collided with the car in which plaintiff and her husband were riding, damaging the car and inflicting the injuries of which plaintiff complains.

At the conclusion of plaintiff's evidence in chief, defendant moved the court to strike the evidence, which motion was denied, and this action of the court is assigned as error.

That Edwards was operating the truck at the time of the accident and was negligent is admitted, but it is maintained by the defendant that, inasmuch as it had filed a plea and affidavit under section 6126 of the Code denying that the operator of the truck was acting as its agent and employed in its business at the time of the accident, as alleged in the declaration, the court should have sustained its motion to strike the evidence because the plaintiff had failed to prove the agency alleged.

■■ It may perhaps be true that if the declaration had only alleged the agency denied by the plea, it would then have been incumbent upon the plaintiff to prove such agency in order to make out a case, as defendant contends. It appears, however, that the declaration also alleges that the defendant owned the truck involved in the accident, and this fact, though not denied by the plea, was proved by the plaintiff in her evidence in chief. Though some courts have held to the contrary, the present majority rule is that,

in an action for injuries caused by the negligent operation of an automobile, proof that the automobile was owned by the defendant at the time of the accident establishes a *prima facie* case for the plaintiff; in other words, from proof of the defendant's ownership, a rebuttable presumption, or inference, arises that at the time of the injury the automobile was being operated by the defendant's servant or agent, or someone under his control, and that the relation of master and servant, therefore, existed between them. *Potts* v. *Pardee*, 220 N. Y. 431, 116 N. E. 78, 8 A. L. R. 785; *Guthrie* v. *Holmes*, 272 Mo. 215, 198 S. W. 854, Ann. Cas. 1918D, 1123; *West* v. *Kern*, 88 Ore. 247, 171 Pac. 413, 1050, L. R. A. 1918D, 920; *Ferris* v. *Sterling*, 214 N. Y. 249, 108 N. E. 406, Ann Cas. 1916D, 1161; *Landry* v. *Oversen*, 187 Iowa, 284, 174 N. W. 255; *McWhirter* v. *Fuller*, 35 Cal. App. 288, 170 Pac. 417; *Enea* v. *Pfister*, 180 Wis. 329, 192 N. W. 1018; *Rockwell* v. *Standard Stamping Co.*, 210 Mo. App. 168, 241 S. W. 979. Also, see note 42 A. L. R. page 900, *et seq*, and cases there cited.

In Vartanian on the Law of Automobiles, section 121, this is said:

"The inconvenience, the difficulty, and in most cases the impossibility to the plaintiff to prove by affirmative evidence that the driver of the automobile was acting under the control and direction of the owner, and was therefore his servant, have led some courts to the adoption of a more rational rule in the application of the general principle above stated. According to that rule, while it is still incumbent upon the plaintiff to make a case by the preponderance of evidence that the driver was the servant of the owner, he need not particularly show that the driver was acting under the control and direction of the owner. It is *prima facie* sufficient for him to show that the automobile was owned by the particular person and was, at the time, being driven by the particular person. Under such evidence

the law *prima facie* presumes that the driver was acting as the servant of the owner."

With the above rule we are in accord, and are therefore of the opinion that the trial court was right in denying the defendant's motion to strike the evidence, as it did.

The only other error assigned is the refusal of the court to set aside the verdict of the jury on the ground that it is contrary to the law and the evidence.

In *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 579, 50 A. L. R. 1425, the late Justice Chichester, speaking for the court, said: "The general rule is that the master is liable for all tortious acts of the servant committed by such servant while acting within the scope of his employment. When the relation of master and servant is established, and the master undertakes to show that he comes within an exception to the general rule, the burden of proving that he does so is upon the master. Thus in *Barmore* v. *Vicksburg*, *So. & P. R. Co.*, 85 Miss. 426, 38 So. 210, 70 L. R. A. 628, 3 Ann. Cas. 594, the court said: 'In order to escape liability, it devolves upon the master to prove that the servant had abandoned the duties of his employment, and gone about some purpose of the servant's own, in which the master's business was not concerned, and which was not incident to the employment for which the servant was hired. If the testimony leaves this question in doubt it must be submitted to the jury.' * * * If there is no conflict in the facts, it is a question of law for the court. *Barmore* v. *Vicksburg*, *So. & P. R. Co.*, *supra;* Berry on Automobiles (4th ed.) 1050; *Idem*, section 1167, page 1040."

Counsel for defendants contend that the undisputed evidence in the instant case shows that, at the time of the accident, Edwards was not using the truck in defendant's business and within the scope of his employment, but had totally departed therefrom, and was on a mission purely personal and entirely disconnected with the business

of his employer; and the question of defendant's liability was, therefore, one of law for the court.

It is maintained in behalf of the plaintiff, on the other hand, that there is sufficient conflict in the evidence to render the question doubtful, and for that reason it came within the exclusive province of the jury.

In behalf of the defendant, Edwards testified that after completing his orders in the western section of the city, on the afternoon of the accident, he drove east down Broad street to the corner of Seventh street, and when he had reached that point (which is only about half a block from the garage where he was supposed to put the truck up), he decided that, inasmuch as it was only about four o'clock, and he had finished his work for the day, he would go across the river into Chesterfield county and get some whiskey for himself. With this object in mind, he turned the truck north on Seventh street to Marshall street, proceeded east on Marshall to Twelfth street, then drove across the Fourteenth street bridge into South Richmond, and thence out on the Midlothian pike, in Chesterfield county, about eight or nine miles from Richmond, where he procured the whiskey and became intoxicated. He further testified that his duties only required him to go to a number of places in the western part of the city and Westhampton that day, but six or seven months having elapsed, he could not then remember the names or addresses of all the customers he called on; that he had no occasion to go to Chesterfield county, or be where he was at the time of the accident on his employer's business, and went there solely for the purpose of getting whiskey for his own use.

It was also testified by John C. Neill, treasurer of the defendant company, that Edwards' duties were entirely in connection with the carpet department of the store, and charge tickets were turned into the office by that department for all work done by Edwards; that, according to

records in said office, all the charges turned in for September 8th, the day of the accident, were for work done by Edwards in Westhampton and the western part of the city, and there were no charges for such work in Chesterfield county. But this witness stated on cross-examination that he had no personal knowledge of what Edwards did or where he went that day, and could not say that he did no work for the carpet department other than that disclosed by the records referred to.

To contradict and discredit the evidence given by Edwards in regard to the question involved, plaintiff relies upon the following testimony: That Edwards told Mr. Bonifant immediately after the accident that he had been "up the road hanging drapery;" whereas, he stated on the stand that he was drunk at the time and if he told Mr. Bonifant that, it was untrue; that he told one Mills, a fellow prisoner in jail, when he was serving a sentence for driving the truck while intoxicated, that on the day of the accident he had been "working at Westham (on the James river in Chesterfield county) hanging some draperies, and had come over the Boulevard bridge and happened to get hold of some whiskey, and got drunk and had the accident," whereas Edwards denied on the stand that he made any such statement; that he told counsel for the plaintiff, in Mr. Bonifant's presence, that he had "been out at Westham" that day, whereas Edwards denied on the stand that he made that statement, and claimed he told them he had been to Westhampton; that it was testified by one Butler that he saw Edwards pass a certain filling station, in Chesterfield county, that afternoon, going away from the place the accident occurred, as near as he could "judge" or "understood," between one and two o'clock, whereas Edwards testified that he did not pass said filling station until after four o'clock.

It was also shown that on the day after the accident, the

treasurer of the defendant corporation informed Mr. Boni, fant that they would settle the damages to the automobile, and if it was necessary to send Mrs. Bonifant to the hospital- they would be responsible for the charge; and that on September 11th, a few days after the accident, the president of the company wrote Mr. Bonifant a letter which, after expressing regret in regard to the accident, concludes as follows: "Mr. Neill advises me that he is trying to keep in touch with the whole situation, and afford you proper relief."

Bearing in mind the rule laid down in *Crowell* v. *Duncan*, which is controlling of this case, the real question presented for our determination, and upon which the final result depends, is whether the evidence relied upon by the plaintiff is sufficient to warrant the jury in disregarding the evidence of defendant's witness, Edwards, going to show that, at the time of the accident, he had abandoned his employer's business and was on a venture or frolic of his own, entirely disconnected therewith.

Viewing the evidence as a whole, the question does not seem to us to be entirely free from difficulty. There is nothing improbable about Edwards' evidence, and the alleged contradictory statements are, in some respects at least, doubtful and immaterial in character. However, since the evidence in question tends to discredit Edwards, under the established rule that the credibility of the witnesses and the weight to be given their evidence in a particular case are properly to be determined by the jury, we feel unable to say that they were entirely unjustified in discarding the defendant's evidence in this particular case, and that the trial court erred in leaving the question of defendant's liability to them.

It may furthermore be said in this connection that the jury had the right to take into consideration the acts and conduct of the officers of the defendant corporation above referred to, as tending to show an admission of lia-

bility on its part for the injuries suffered by Mrs. Bonifant by reason of Edwards' negligence.

The court will not set aside the verdict found by the jury merely because it doubts the correctness of the verdict, or because, if on the jury, it would have found a different verdict. *Virginia Fire and Marine Insurance Co.* v. *Hogue*, 105 Va. 355, 54 S. E. 8; *Thompson* v. *Norfolk & P. Traction Co.*, 109 Va. 733, 64 S. E. 953.

For the foregoing reasons, the judgment complained of will be affirmed.

*Affirmed.*

EPES, J., dissenting.