# Wytheville

WESTERN UNION TELEGRAPH COMPANY V. MARJORIE
ELIZABETH PHELPS, ETC.

June 15, 1933.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Hughes, Little & Seawell,* for the plaintiff in error.

*Kelsey & Jett,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

This action was instituted by Marjorie Elizabeth Phelps, suing by V. L. Phelps, her next friend, who will hereafter be referred to as the plaintiff, against Western Union Tele-

graph Company and Leslie Webb, defendants. The trial was had before a jury and resulted in a verdict of $800.00 in favor of the plaintiff against both defendants. The court refused to set aside the verdict and entered judgment thereon.

The purpose of the action was to recover of the defendants damages for personal injuries sustained by the plaintiff in an accident wherein she and Leslie Webb were involved, occurring on May 29, 1930, in Berkley ward in the city of Norfolk at a point approximately between one and two miles from the main office of the Western Union Telegraph Company.

Leslie Webb was in the employ of the Western Union Telegraph Company as a messenger boy. His duties required him to deliver messages for which he was paid a commission on each message delivered. The Western Union Telegraph Company in order to expedite the delivery of messages divided the city of Norfolk into zones. The zone in which Webb was working on the day the accident occurred was designated as zone B and embraced all the territory within a quarter of a mile of the company's main office. This zone embraced the business section of the city. As stated, the accident occurred between one and two miles from the main office of the company and at a point within two or three doors of the home of Webb. He was not at this point for the purpose of delivering or receiving any telegram or telegrams for the company and he was not there under the authority or direction of the company. While nearing his home and riding his bicycle on the sidewalk, according to the testimony of the plaintiff, who was a little girl about eight years old, he collided with her causing the injury for which she instituted this action.

The testimony introduced on behalf of the plaintiff tended to show that the accident occurred between 3:15 and 3:30 o'clock P. M. At the time Webb was wearing the trousers which he generally wore while on duty as a messenger. The bicycle upon which he rode carried a small sign of the

Western Union Telegraph Company upon it. The contract for the purchase of the bicycle was introduced and it showed conclusively that it was the personal property of Webb and not of the Western Union Telegraph Company.

The telegraph company contended that Webb was off duty at the time of the accident; that he checked out at 3:58 o'clock P. M. on that day; that at the time he was not engaged in any business or mission of the company; that he was not acting in any way as its agent or servant and that the fact that he was wearing the trousers, which he generally wore while working for the company was not sufficient to render the company responsible in damages to the plaintiff.

The defendant, Webb, did not seek a writ of error to the judgment in so far as it applied to him. The present writ of error is being prosecuted by the Western Union Telegraph Company alone.

The testimony shows that under the rules of the company, its messengers were required to change their uniforms when going off duty and place them in a locker at the office of the company and for that purpose the messengers were furnished a locker key with which to open and lock the locker after the uniforms had been placed therein. The testimony tends to show that at the time of the accident Webb was returning to his home for the locker key which he had failed to take with him when he reported for duty that morning and while he was upon this mission the accident occurred which caused the injury to the plaintiff.

After the evidence for the plaintiff had been introduced, the defendants moved to strike it out but the court overruled the motion. After the verdict had been rendered they moved to set it aside on the grounds that it was contrary to the law and the evidence and without evidence to support it, and also upon the ground that the jury had been misdirected and improper evidence had been permitted to be introduced. This motion was also overruled and the judgment here complained of was entered.

The principal point presented is whether the defendant, Webb, was acting within the scope of his employment when the plaintiff was injured. It has been clearly established that Webb was in the employ of the Western Union as a messenger on the day in question; that at the time of the accident he was wearing a part of his uniform which was ordinarily required to be worn by messengers while they were on duty; that he was riding his own bicycle which had a Western Union plate on it when he collided with the plaintiff; that the territory in which he was directed to work on that day was the territory embraced in zone B and it extended no farther than one-fourth of a mile from the main office of the company; that the point of accident was just a very short distance from Webb's home in Berkley ward, a distance of from one to two miles from the office of the company and beyond the territorial limits of zone B; that he was at this point on no business or mission of the Western Union, as he had no messages to be delivered or received there and that he was not authorized or directed by the company to go there on any of its business. There is no conflict in the evidence as to these facts.

The conflict in the evidence arises in determining the time of the accident. It is estimated by the plaintiff's witnesses to have occurred between 3:15 and 3:30 P. M., while the company introduced its time sheets which disclose that Webb did not go off duty until 3:58 P. M. From this the company contends that it is conclusively shown that Webb was not on duty when the accident occurred because the time sheets and tickets all show that he was engaged in delivering messages in zone B until 3:58 when he checked out for the day.

The exact time of the accident is not important unless Webb was then on some business or mission of the Western Union. It therefore makes little difference whether it occurred at 3:30 or after 4:58 in the afternoon, if at the particular time he was not acting within the scope of his employment and performing his duties for the company. It

is useless to speculate on the reason or purpose for his presence at the point of the accident or to determine what his purpose was. He certainly was not there to deliver or receive any telegram or message for the company, even though, at the time, he had not gone off duty for the day. His employment did not require him to be there. If he was there on a mission of his own and not in the interest of the company, it could not be held liable to the plaintiff for her injuries.

The law controlling cases of this kind is plain. The great difficulty is in its application to the peculiar and varying facts. It is nearly impossible to state it in a comprehensive way so as to be clearly applicable to all cases. Prentis, P., said in *Appalachian Power Co.* v. *Robertson,* 142 Va. 454, 129 S. E. 224, that:

"It seems to us that one of the best statements on the subject is found in *Morier* v. *St. Paul Ry. Co.,* 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793, where this is said: 'A master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only occur when that which is done is within the real or apparent scope of the master's business. Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. And, in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself, and as his own master, *pro tempore,* the master is not liable. If the servant steps aside from his master's business, for however short a time, to do an act not connected with such business, the

relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all the authorities.'

■ "In the note to *Goodloe* v. *Memphis, etc., R. Co.*, 107 Ala. 233, 18 So. 166, 29 L. R. A. 729, 54 Am. St. Rep. 72, it is said that 'the simple inquiry and true test is not whether a given act was done during the existence of the servant's employment, but whether it was in the course of the servant's employment, or outside of it. *Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543; *Cosgrove* v. *Ogden*, 49 N. Y. 255, 10 Am. Rep. 361; *Davis* v. *Houghtellin*, 33 Neb. 582, 586 (50 N. W. 765, 14 L. R. A. 737) ; *Eckert* v. *St. Louis Transfer Co.*, 2 Mo. App. 36; *Sagers* v. *Nuckolls*, 3 Colo. App. 95 (32 Pac. 187).' "

The case at bar is not controlled by the principles announced and applied in *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425, and *Sydnor & Hundley, Inc.* v. *Bonifant*, 158 Va. 703, 164 S. E. 403.

In the *Crowell Case* the servant was driving the master's automobile as a taxi within business hours in the usual field of his operations and with the taxi sign displayed. He and his friend who was riding with him at the time testified that they were not upon the master's business but pursuing their own pleasure. This court held that such testimony was not conclusive but that the question of whether the servant was acting within the scope of his authority was still a question for the jury, as there was ample evidence to justify the conclusion reached by the jury that the servant was still in the employ of the master and in charge of the master's taxi, at the time of the accident. It was further held that when the relation of master and servant is once established, a rebuttable presumption is created that the relation continues and was in existence when the injury occurred and that the burden is upon the master to show that the servant was not acting within the scope of his employment at the particular time of the injury. It was also held that in doubtful cases involving this question the doubt

will be resolved against the master because he set the servant in motion, at least to the extent of requiring the question to be submitted to the jury.

That case is unlike the case at bar. There the servant was driving his master's taxi within the usual field of his operation and within business hours with the taxi sign displayed. Here the servant Webb was riding his own bicycle, clearly beyond his field of operation and upon no business of the Western Union according to the undisputed testimony. If we indulge the rebuttable presumption that the employment is presumed to have existed at the time of the injury on account of the relation of master and servant having been established, then the presumption is completely annihilated by the uncontradicted testimony which shows that at the time in question Webb was on no business of the company. The case at bar is not one of those doubtful cases on the point in question, because all of the evidence convincingly shows that Webb was not delivering any messages for the company in that particular neighborhood but was confined in his operations for the master to zone B.

In the *Sydnor & Hundley Case* the servant was driving the master's truck. He was directed by the master to go to a. certain point and perform certain acts for the master. When he completed his duties he later became intoxicated and in returning to the garage by a different route he injured a third party. The evidence tended to disclose certain admissions of liability made by the master to the injured party and certain admissions made by the servant to one Mills which tended to show that the servant was upon his master's business when the injury was inflicted. The court approved the holding in the *Crowell Case* and held that the question of whether the servant was acting within the scope of his employment was for the jury, and they having decided that question adversely to the master the court refused to reverse the judgment carrying the verdict into effect. It is quite apparent that there was conflicting evidence before the jury on the point. In the case at bar,

which is clearly distinguishable upon the facts from the *Sydnor & Hundley Case,* there was no conflict in the evidence as to whether Webb was acting for the master when he injured the plaintiff. All of it conclusively shows that he was on no business of the Western Union when he went over into Berkley ward, outside of his zone and injured the plaintiff.

The case at bar is controlled largely by the well known principles enunciated in the case of *Appalachian Power Co.* v. *Robertson, supra.*

■ Webb having left the field of his operation (if we assume that he was not off duty for the day at the time), and having gone over to Berkley ward on a mission not for his employer, the Western Union, but for some other reason or purpose, and having gone beyond the control of his employer and beyond the zone in which he was directed to work, was acting beyond the scope of his general employment and the Western Union is not liable for any injury he may have inflicted upon the plaintiff.

■ This point was raised in the trial court by instructions, the motion to strike the evidence and the motion to set aside the verdict. The trial court took the view that a jury question was presented. As has been indicated we are of the opinion that under the evidence which is not conflicting Webb was acting beyond the scope of his employment at the time. In cases of this nature a question of law and fact is presented, which is to be determined by the court when the facts are not disputed or are conclusively proven. Such cases are for the jury when the facts are disputed or the evidence is conflicting.

It is unnecessary to consider the other questions presented. The judgment of the trial court against the Western Union will be reversed, the verdict set aside as to it and final judgment entered here in its favor.

*Reversed.*