## POSTAL TELEGRAPH–CABLE CO. v. THOMAS.

### No. 6534.

United States Court of Appeals for the District of Columbia.

Decided April 6, 1936.

Frank J. Hogan, Edmund L. Jones, and George Monk, all of Washington, D. C., for appellant.

Michael F. Keogh and Peter G. Chaconas, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a judgment entered in the Supreme Court of the District of Columbia for damages resulting from an automobile accident. It appears that on December 1, 1933, about 6:45 p. m., after dark, Wert L. Thomas, the plaintiff below, was walking across New York avenue at its intersection with Fourteenth street, within the space prescribed for pedestrians and marked by white lines, keeping a constant lookout for approaching traffic. An automobile unobserved by Thomas approached along New York avenue from the east and struck him without warning at the crosswalk when about fifteen feet from the north curb which he was approaching. Thomas suffered serious injuries as a result of the accident.

The automobile which struck Thomas was driven by Harold Satterfield. The present case was brought in the lower court against the Postal Telegraph-Cable Company upon a claim that Satterfield at the time of the accident was an employee of the company and was driving the automobile as its servant and agent. It was claimed by the plaintiff that the automobile was driven negligently by Satterfield and in violation of the traffic regulations of the District of Columbia. The defendant company denied that Satterfield was driving the car as its agent or employee, and also denied the charge of negligence and violation of the District of Columbia regulations. The defendant also pleaded contributory negligence of the plaintiff. The case was tried to the jury, and at the close of the evidence a motion was filed by the defendant for a directed verdict in its favor upon the ground that it appeared from the undisputed evidence that, as a matter of law, Satterfield was not the agent or employee of the company when driving the automobile at the time of the accident.

The court denied the motion for a directed verdict and submitted the case to the jury. A verdict against the defendant in the sum of $1,500 was returned by the jury upon which the court entered judgment. The present appeal was taken by the company from the ruling of the court on this issue.

It appears from the undisputed evidence in the case that at the time in question the principal office of the defendant company was located in the Evans Building on New York avenue in the city of Washington, and that they maintained a second office in the National Press Building on F street in the same city. It was engaged in the business of transmitting telegraphic messages and in delivering and receiving messages in the city of Washington. It appears that Satterfield, the driver of the automobile in question, at the date of the accident and for some time prior thereto, had been employed on weekdays by the defendant company as a telegraph messenger boy, and his sole duties were to collect and deliver telegrams either by walking or riding his bicycle, and on Sunday to work at the main office in the Evans Building as an automobile messenger, using an automobile of his own procuring; that sometimes he used his mother's automobile on weekdays when automobiles were short; that on December 1, 1933, which was a Friday, and for some time prior thereto, he was assigned to the branch office of the defendant in the Press Building with working hours from 4 o'clock in the afternoon until 10 o'clock at night; that from 4 p. m. to 8 p. m. he was paid on a commission basis for each message collected or delivered by him, and was paid nothing if he did not collect or deliver a telegram; that from 8 p. m. to 10 p. m. he was paid on an hourly basis at the rate of 30 cents an hour; that there were no facilities at the Press Building branch of the defendant company for storing uniforms for messenger boys, and that all messenger boys assigned to the Press Building office kept their uniforms in the main office of the defendant company located in the Evans Building; that all bicycle messenger boys employed by the defendant were

required to furnish their own bicycles; that on the day before the accident Satterfield had broken his bicycle, and on the day of the accident, shortly before 4 p. m., he went to the main office of the defendant company and secured his uniform; that after he had put on his uniform he waited around in the uniform department maintained by the company in the Evans Building and then telephoned Mr. Horn, the manager of the Press Building office of the company, that he had no bicycle, but that he was going to the bicycle shop to try to get one and would get in later; that the bicycle that Satterfield used in his work, and which he had broken the day before the accident, belonged to him; that on the day of the accident Satterfield had come to work in an automobile owned by his mother, and after telephoning Mr. Horn, he proceeded to the bicycle shop located at 718 Ninth street northwest in his mother's automobile; that he stayed at the bicycle shop for an hour or so, but was unable to get a bicycle for use on the day of the accident; that upon leaving the bicycle shop Satterfield intended to return to the Evans Building office of the defendant company for the purpose of phoning Mr. Horn that he would not be able to come in, as he could not get a bicycle, and also because he wanted to meet a friend of his whom he expected to be at the Evans Building office; that while driving his mother's automobile from the bicycle shop to the Evans Building the accident happened; that on the day of the accident Satterfield did not collect or deliver any messages for the defendant company and received no pay whatever for that day.

It appears, furthermore, that on the day of the accident when Satterfield came to the Evans Building he put on his uniform; that at that time he called Mr. Horn and told him that he was on his way to the bicycle shop to get a bicycle to get in later; that Satterfield was supposed to report to Mr. Horn before he actually did any work at all; that he did not again communicate with Mr. Horn on that day; that he did not go to the Press Building on that day; that after the accident Satterfield took the plaintiff to the hospital, reported the matter to the police station, and then returned to the Evans Building and removed his uniform; that he did not report the accident to his superior at the principal office because no one was there at that time of night, but he told the uniform attendant about it and later reported it to his superior; that prior to the accident on some occasions he had

used his mother's automobile to deliver messages when the company was short of automobile messengers and had also used it on Sundays; that he had received permission to do this from Mr. Simmons, the manager of the company; that in accordance with his usual custom when he came in for work on the day of the accident he put on his uniform in the Evans Building; that thereafter he stayed around the uniform department for some time; that he stayed right in the department downstairs; that the messenger boys when awaiting calls stay down there sometimes—they stay all over the Evans Building; that while Satterfield was waiting at the Evans Building, if he had been called to deliver a message he would have to go; that the messenger boys employed by the defendant and assigned to branch offices could be sent out from the main office in cases of emergency, but on the day of the accident Satterfield was not called upon to go anywhere; that, however, prior to the day of the accident on some occasions he had been sent out with messages from the Evans Building, but on those occasions he did not know whether the emergency existed or not; that he waited at the Evans Building about 45 minutes when he left for the bicycle shop; that when Satterfield telephoned to Mr. Horn about getting a bicycle, Mr. Horn registered no objections but said that it was agreeable for Satterfield to get his bicycle and for him to go to the shop after it; that when Satterfield reported for work at 4 o'clock he remained for 45 minutes at the office and was on call to take messages out; that he would have had to go out if he had been called, but that on the day of the accident no one in the main office requested him to do anything; however, upon other occasions he had been sent out.

After both plaintiff and defendant had announced their part of the case as closed, and the defendant had moved the court for a directed verdict, the court of its own motion recalled the witness Satterfield to the stand, and he stated that he had been told that he could only wear his uniform when on duty. When examined by defendant's counsel, Satterfield testified: "That he expected to go on duty if he got a bicycle, but that he never got a bicycle and never reported to Mr. Horn for the purpose of going on duty other than to telephone him that he would be at work later."

We are of the opinion that the defendant was entitled to a directed verdict in its favor at the close of all the evidence in

the case upon the ground that when the accident occurred Satterfield was not acting as an employee in the service of the company.

It appears without contradiction that Satterfield, like the other messenger boys of the company, was bound to provide his own bicycle for carrying and collecting telegrams for the company. On the evening before the accident, Satterfield had broken his bicycle, and accordingly, when he reported to the company's office for service the next day, he was compelled to secure a bicycle for his use as a messenger. He decided to go to the bicycle shop for the purpose of either getting his own bicycle, if repaired, or to borrow another for use in its place. The journey was not made by order of any officer of the company, nor was it made in the company's interest or service, but for the benefit of Satterfield only. The journey was made in his mother's automobile, and there is no testimony that any one connected with the company knew that he intended to use his mother's or any other car for this purpose. It appears that he was unable to secure a bicycle at the repair shop, and after spending an hour or so at the shop, he proceeded to return in the same automobile to the company's office for the purpose of reporting to Mr. Horn that "he would not be able to come in, as he could not get the bicycle," and also for the purpose of meeting a friend who was to be at the office of the company in the Evans Building. It was upon the return trip from the bicycle repair shop that the accident occurred.

The undisputed evidence also shows that Satterfield, on the day of the accident, received no pay from the company and performed no work for it.

In the case of Western Union Telegraph Co. v. Phelps, 160 Va. 674, 169 S.E. 574, 575, wherein the plaintiff sued the defendant for personal injuries suffered when she was struck and knocked down by one of the defendant's messenger boys, the testimony showed that one Webb was employed by defendant Western Union as a messenger boy; that his duties required him to deliver messages for which he was paid a commission for each message delivered. The court in its decision of the case said: "The exact time of the accident is not important unless Webb was then on some business or mission of the Western Union. It therefore makes little difference whether it occurred at 3:30 or after 4:58 in the afternoon, if at the particular time he was not acting within the scope of his employment and performing his duties for the company. It is useless to speculate on the reason or purpose for his presence at the point of the accident or to determine what his purpose was. He certainly was not there to deliver or receive any telegram or message for the company, even though, at the time, he had not gone off duty for the day. His employment did not require him to be there. If he was there on a mission of his own and not in the interest of the company, it could not be held liable to the plaintiff for her injuries."

In Green v. Western Union Telegraph Co. (Mo.App.1933) 58 S.W.(2d) 772, 773, it appears that the plaintiff was injured when struck by Quest, a bicycle messenger boy of the defendant. Quest was employed by the defendant as a messenger in St. Louis. He used his own bicycle. His hours of employment were from 8:30 a. m. to 6:30 p. m., with an hour for lunch. This lunch period varied from day to day and was determined upon by his supervisor. The accident occurred when Quest was returning to the office from his lunch. There was a judgment for the plaintiff, and the appellate court in reversing, among other things, said:

"It thus definitely appears from the testimony adduced on behalf of plaintiff, and by which she is necessarily bound, that defendant Quest was a messenger boy in the employ of the defendant telegraph company, delivering messages by means of riding a bicycle which belonged to him, and that on the day in question he was directed to go to his lunch at 12:35 p. m. by his superior, a clerk named Turner; that he returned to the office and reported back for work at 1:05 p. m.; that during that lunch period he did not deliver any messages or do anything for the defendant telegraph company; and that it was during this particular lunch period that Quest while riding his own bicycle, ran into and knocked down the plaintiff.

"If the act resulting in the injury is committed by the servant at a time when he is off duty, as for instance, after the day's work is completed, or at noon hour, or where the servant has been given a holiday, the master will not be liable therefor; and it has been held that this is so, although the act is one which, if done by the servant while on duty and at a time when actually engaged in the master's service, would be within the course and scope of his usual and ordinary duties."

The ground chiefly relied upon by the plaintiff in the present case was that Satterfield, while driving the automobile, was dressed in the uniform of the company. It

appears that it is contrary to the rules of the company that an employee should be dressed in its uniform at any time except when on duty for the company. It is therefore argued that the company is liable for his conduct under such circumstances. This claim, however, cannot be sustained in a case like this where it plainly appears by unmistakable evidence that at the time the employee was not engaged in the company's service and was therefore not entitled to be dressed in the company's uniform. Curry v. Stevenson, 58 App.D.C. 162, 26 F.(2d) 534; Peabody v. Marlboro Implement Co., 63 App.D.C. 288, 72 F.(2d) 81.

The judgment of the lower court is reversed, with costs, and the cause remanded for further proceedings not inconsistent herewith. .

Reversed.