Standard Accident Insurance Company *v.* Lillian H. Swift & a.

*Paul E. Nourie* (by brief and orally), for the plaintiff.

*Johnson & Keller (Mr. Keller* orally), for Lillian H. Swift and Gordon H. Swift.

*Cheney, Nighswander & Lord (Mr. Nighswander* orally), for the American Youth Hostel School, Inc.

MARBLE, J.   The American Youth Hostel School was established in 1939 at Meredith.   Its curriculum comprised the usual academic

requirements of a high school together with various work projects, so called. During the months of July and August the school maintained a summer camp for boys and girls on a large farm near Lake Winnipesaukee. The activities of the camp are thus described in the school's prospectus:

"Life at the AYH Camp is a happy combination of work and play. Mornings start at six o'clock with barn chores and household tasks. As the boys and girls brush the horses and cows and carry buckets of grain and water to the hens and pigs, they discover that work is fun when done in the jolly spirit of comradery.

"Soon after breakfast the camp is a bustle of activity as all kinds of out-door jobs get underway. The boys are busy with hammer and saw, building an addition to the girls' dormitory. Others are converting the old ice house into a work shop and art studio; others are making a sailboat. Some of the boys, and girls too, go into the fields to pitch hay or drive the horse rake. Many of the girls enjoy canning and making jelly. Everyone has a hand in common household tasks, tidying his own room, washing and drying dishes.

"After lunch the rest of the day is free for sports and recreation. . . ."

Gordon Swift attended the school and camp in the years 1939 and 1940. His mother paid the tuition in full for the first camp period, but received a reduction in the tuition rate for the school year which followed. On May 30, 1940, the director of the school, wishing to secure Gordon's enrollment for another year, wrote Mrs. Swift suggesting that Gordon's work at the camp during the coming summer "be considered part of an earned scholarship for the ensuing year."

In her report to the trustees of the school for the period ending July 27, 1940, the director included Gordon's name in the list of enrolled students stating that he and three others "paid nothing because they came to camp with the understanding that they would assume more of the work responsibilities than other campers." The names of these students are not included in the list of paid employees enumerated in the report.

The director testified that no distinction was drawn between the "type of work that the students did who were paying their full tuition and those who were only paying part or none of the tuition," that "no one knew who was paying full tuition and who wasn't," that Gordon Swift was given no special duties but "of his own volition" took over some of the more responsible projects, that he "had all the sports and privileges that the other campers had," that he

was a very worthy and dependable boy and merited a scholarship, and that she (the director) had suggested that his work at the camp be considered "part of an earned scholarship" merely because she "thought it would make him feel that he had in a sense helped his mother" and was being appreciated by the school.

The evidence is uncontradicted that the work which Gordon was doing at the time he received his injury was not work which he had been ordered to perform, but work which he voluntarily undertook in execution of a regular camp project.

Subject to the defendants' exception, certain written statements made to one of the plaintiff's adjusters after the accident were introduced in evidence. One was by the business manager of the school, who testified that he "was not thoroughly acquainted with what had taken place" and had had "absolutely nothing to do with any transaction" between the director and Mrs. Swift. The other was by Gordon himself. Each statement was to the effect that the "money" which Gordon "earned" by his work was to be applied in part payment of his tuition.

Counsel have called our attention to particular portions of the foregoing evidence in an attempt to demonstrate the truth of their respective contentions regarding Gordon's precise legal status. But, for the reasons which follow, we deem it unnecessary to consider all the arguments which they have advanced.

Clause f, on which the plaintiff relies, is a contractual limit of liability (Laws 1937, c. 161, s. 16; *Shelby &c. Co.* v. *Lynch,* 89 N. H. 510) and, as such, is subject to the rules governing the interpretation of contracts. It is part of a printed policy drawn presumably by specialists in the law of insurance and addressed in the specific instance to laymen who the plaintiff must have known could not have been conversant with the technical meaning of many of its terms. The test to be applied is not what the insurance company intended the clause to mean but what a reasonable person in the position of the named insured would have understood it to mean. *Hoyt* v. *Insurance Co., ante,* 242 and cases cited.

At the time the policy was issued the occupants of the camp comprised thirty-seven students and a "staff" of twelve persons including teachers and regular employees. Thirty students paid full camp tuition, two paid half tuition, and four "paid nothing" because of the understanding that they would assume additional responsibilities. The tuition of the remaining student was paid in part by the State and he too assumed added responsibility.

The duty of interpreting the policy in the light of the surrounding circumstances devolves upon the court, and it is our conclusion that the ordinary person in the position of the named insured would have given to the word "employee" its popular meaning and would not have supposed that a student who participated in the same work, sport, and recreation as his fellow-students and was subject to no hazards which they were not likely to encounter became an "employee" merely because he assumed some additional responsibility as part payment of his tuition.

This result makes it unnecessary to consider whether Gordon Swift, even if deemed to have been an employee of the named insured, was not engaged in domestic employment within the meaning of clause f.

*Judgments for the defendants.*

BRANCH, J., did not sit: the others concurred.