## WISE, et ux v. WESTERN UNION TELEGRAPH CO.
### No. 64-2242-L.

Circuit Court, Duval County.

December 15, 1962.

Gerald Sohn of Searcy & Sohn, Jacksonville, for plaintiff.

Harold B. Wahl of Loftin & Wahl, Jacksonville, for defendant.

FRANK H. ELMORE, Circuit Judge.

*Summary judgment for defendant:* This cause came on to be heard after proper notice and argument of counsel on defendant's motion for summary judgment.

Plaintiffs have taken the depositions of two witnesses to the accident, of former Western Union bicycle messenger Snipes who was involved in the accident, and of three Western Union agents and employees in charge of the Jacksonville office.

Plaintiffs in their complaint specifically allege that at the time and place of the accident between plaintiff wife and former Western Union bicycle messenger Snipes on July 31, 1964, in Jacksonville, Snipes was "an employee of the defendant, and while then and there engaged in the course and scope of his employment for the defendant" caused the accident. The defendant telegraph company has specifically denied these allegations.

There is no dispute as to the facts. Snipes, a 16-year old boy, was employed by the telegraph company as a bicycle messenger on a trial basis on the morning of the accident and went to work at 10:25 A. M. At 2:15 P. M., he was checked off from duty to go to lunch. The telegraph company employees testified that both state and federal law, as well as the union contract which the telegraph company has with its employees, require that a minor employee of this kind must be given time off from duty for lunch after he has worked from 3½ to 4½ hours. The messenger route records showing what he did from 10:25 A. M. to 2:14 P. M., were introduced, with the times stamped on each sheet. District manager Moore, chief delivery clerk Lester, and delivery clerk Dowell of the telegraph company, when deposed by plaintiffs, all testified that when a messenger went on lunch time, he went off pay, he was off duty, and the telegraph company had no control or authority, nor did it attempt to exercise any direction over him, or his activities, until he reported back on duty after the lunch period; that there were heavy penalties under the state and federal law if the telegraph company attempted to exercise direction or control over him while he was on his lunch time and off duty.

There is no dispute in the testimony that the accident happened about five or ten minutes after Snipes checked off duty, turned in his messenger kit, and left the Western Union building on his bicycle to go to lunch. At the time of the accident, he testified, he was on his way home to lunch, although none of the Western Union employees knew this until after the accident as they did not consider it any of their affair as to where he had his lunch once he was checked off duty. Snipes testified that he did not have any messages to deliver or other work to do for the telegraph company after he left the Western Union office, and Messrs. Lester and Dowell testified, in response to direct questions from counsel for plaintiffs, that had there been a message to deliver next door to Snipes' home, and had Snipes been going home for lunch, the telegraph company practice required Snipes to deliver the telegram and come back to the Western Union office before he was checked off duty for lunch.

Snipes likewise testified that he was off pay and off duty at the time of the accident; that he had been checked off duty by Mr.

Dowell; and that he thoroughly understood that he was off duty and off pay when he left the Western Union office to go to lunch.

Under these circumstances, there can be no question but that Snipes was not "engaged in the course and scope of his employment for the defendant at the time of the accident".

This is not a case of an employee deviating slightly from the course of his employment while on duty, and having an accident with a dangerous instrumentality like an automobile or other motor vehicle. An ordinary bicycle is not a "dangerous instrumentality". This is a plain case where an employee had been checked off duty and was not engaged in the course and scope of his employment for the employer after he checked off duty.

Snipes owns his own bicycle, although he was given an allowance of 3¢ per hour for the time he used it for the telegraph company. He was paid from the time he went on duty at 10:25 A. M. until he checked off duty at 2:15 P. M. the day of the accident, and for another hour when he came back the following Monday to answer questions respecting the details of how the accident happened. He was not paid for any time on the day of the accident after he checked off duty for lunch. In answer to the direct question of plaintiffs' counsel, Snipes said he was "fired" after the accident.

Bicycle messenger Snipes was not being paid at the time of the accident, he was off duty at the time of the accident, and he was not under the control or direction of the defendant at the time of the accident. When he was checked off duty for lunch and off the payroll, he had completed his employment connection with the defendant until he checked on duty again after he had returned from the lunch period required by law.

As stated at 21 Fla. Jur. 603 —

"The test of liability of a master for the tortious act of his servant is whether the acts of his servant causing the injury to the third person are done in the scope or course of the servant's employment. A servant acts within the scope of his employment when he is engaged in doing what the master directs him to do, or what he could be expected, from the nature of his employment, to do. The question of whether the employer knew of the act, or would have approved, is not determinative. If the employee, being engaged about the business of the employer, adopts methods that he deems necessary, expedient, or convenient, and the methods adopted prove hurtful to others, the employer may be held liable. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration."

Cited as a footnote is the case of Western Union v. Thomas (1939), 139 Fla. 474, 190 So. 878, where the court said at 139 Fla. 475 —

"The law is settled that the plaintiff must make it affirmatively appear that at the time of the accident James Dobson was in the employ of the defendant, and was acting within the scope of his employment; otherwise it [defendant] cannot be required to respond in damages."

In the case of J. L. Wood v. The Western Union Telegraph Company, USDC-SD-Fla., No. 2034-J-Civil, Judge Simpson held the telegraph company was not liable for an accident by a messenger which happened after the messenger had checked off duty at 6 P. M., even though the accident happened around 7:20 P. M. while he was on his way back to the Western Union office to do some painting for the company that night, and said —

"Vann was not engaged in the course of his employment with the telegraph company at the time of the accident. See Foremost v. Godwin (Fla.1946) 26 So.2d 773, where the court held the master not liable for accident caused by a car driven by a collector who was on his way to work (even though master contributed towards maintenance of automobile.) The court held collector was not engaged in the course of employment at the time of the accident."

In Green v. Western Union (Mo.), 58 S.W.2d 772, the court held that the burden was on the pedestrian to show that the messenger was performing telegraph company business when the accident happened. We quote from the opinion —

"The mere fact that Quest was in the general employ of the telegraph company cannot make it liable. It was so held in the case of Farber v. Mo.Pac.R.R.Co., 32 Mo.App. 378,382. *The test is whether the servant at the time of the alleged accident was engaged in the performance of the master's business concerning which the servant was employed.* Evans v. A. L. Dyke Automobile Supply Co., 121 Mo.App. 266, loc.cit. 277, 101 S.E. 1132; Garretzen v. Duenckel, 50 Mo. 104, 108, 11 Am.Rep. 405. The burden, therefore, was upon plaintiff to show that Quest was about the business of the telegraph company at the time he ran into plaintiff. Elliott v. Payne, Agent, 293 Mo. 581, 239 S.W. 851, loc.cit. 856, 23 A.L.R. 706. * * *

" 'If the act resulting in the injury is committed by the servant at a time *when he is off duty,* as for instance, after the day's work is completed, *or at noon hour,* or where the servant has been given a holiday, the master will not be liable therefor; and it has been held that this is so, although the act is one which, if done by the servant while on duty, and at a time when actually engaged in the master's service, would be within the course and scope of his usual and ordinary duties.' " (citing cases) (Italics added.)

In the case of Kyle v. Postal Telegraph and Cable Company (Kan.), 235 Pac. 116, the court held that the company was not liable on the following facts. The messenger left the office at 5

o'clock on Saturday afternoon to report for duty again the following Monday morning. He was given some reports which he was to deliver on Monday morning. He had an accident on the way home and the court held that since he was not under the control of the telegraph company at the time he was not acting within the course of his employment, and that, therefore, Postal was not liable.

To the same effect, see Clower v. Western Union, 18 Ga.App. 775, 90 S.E. 730.

At 57 C.J.S. 308 (Master and Servant, Sec. 570(3), it is stated —

"Conduct of a servant is within the scope of his employment only when it occurs substantially within authorized time limits or during a period which is not unreasonably disconnected from the authorized period. Ordinarily the master will not be liable if the act resulting in the injury is committed by the servant at a time when he is *off duty*, as, for instance, after the day's work is completed, or at a free hour, *or while taking time away from his work for meals*, or where the servant has been given a holiday, and it has been held that this is true although the act is one which, if done by the servant while on duty and at a time when actually engaged in the master's service, would be within the course and scope of his usual and ordinary duties."

Among the cases cited in support is Sedberry v. Western Union (La.1942) 9 So.2d 73, from which we quote the headnote —

"Telegraph company, which gave employee *one hour off duty daily during which time employee was not paid and was at complete liberty* and which required employee to furnish his own transportation and maintained no supervision over type of transportation furnished, was not liable for injuries sustained by boy in collision between bicycle on which he was riding and motorcycle operated by employee during employee's free hour when employee was returning to work after repairing a tire." (Italics added.)

Also cited are the Kyle and Green cases, supra, as well as Futterman v. Western Union, 43 Fed.Supp. 729, and Tipton v. Western Union, 68 Fed. Supp. 854, discussed below.

In Futterman v. Western Union (D.C.La. 1942), 43 Fed.Supp. 729, the bicycle messenger boy still had on his uniform at the time of the accident but he had checked off duty at 11 P. M. to go to dinner. The court held he was off duty, "not acting in the course of his employment", and the telegraph company was not responsible for the accident.

In Tipton v. Western Union (D.C. D.C. 1946), 68 Fed.Supp. 854, the bicycle messenger boy had gone to lunch when the accident occurred. The court held he was "not acting within the scope of

his employment" even though he was still wearing his uniform, following Postal v. Thompson (C.A.D.C. 1936), 83 F.2d 608, where the authorities are cited and discussed.

Upon consideration, therefore, it is ordered and adjudged, that there is no genuine issue as to any material fact, and that defendant is entitled to judgment as a matter of law; that plaintiff Clara B. Wise and Frank W. Wise, her husband, take nothing by their suit; and that the defendant, the Western Union Telegraph Company, a corporation, go hence without day. The plaintiffs took the depositions herein, the defendant has incurred no taxable costs, and therefore no costs are taxed against the plaintiffs in favor of the defendant.