**UNITED SERVICES AUTOMOBILE AS-SOCIATION, Plaintiff,**

v.

**Andrew Byrd PINKARD**
**and**
**Edward J. Hanks, Administrator of the Estate of Clifton Wiley Hanks, Deceased, Defendants.**

**Civ. A. No. 64–C–6.**

United States District Court
W. D. Virginia,
Danville Division.

Feb. 11, 1965.

S. D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., for plaintiff.

Jackson L. Kiser, Young, Kiser & Frith, Martinsville, Va., for defendant Pinkard.

Kenneth M. Covington, Martinsville, Va., for Edward J. Hanks, etc.

## OPINION

DALTON, Chief Judge.

This is a declaratory judgment action filed by United Services Automobile Association (hereinafter referred to as United Services) against Andrew Byrd Pinkard and Edward J. Hanks, Administrator of the Estate of Clifton Wiley Hanks. The action arose out of an automobile accident which occurred near Roanoke, Virginia, on June 26, 1963, in- of volving a 1955 Oldsmobile automobile owned by Clifton Wiley Hanks and being operated at the time of the accident by Andrew Byrd Pinkard. Pinkard instituted an action in the Circuit Court of the City of Martinsville, Virginia, against Hanks' estate seeking damages for injuries he sustained as a result of alleged negligence on the part of the decedent, and the jury returned a verdict of $12,000 in his favor. The instant case was brought to determine United Services' liability on an automobile liability insurance policy issued to Clifton Wiley Hanks.

The material facts are not in dispute. On June 26, 1963, Hanks casually encountered defendant Pinkard on a street in down town Martinsville and asked Pinkard if he would drive him to Roanoke that night. The two had been friends for a period of ten or twelve years and several times in the past Pinkard had gratuitously transported Hanks various places in the latter's automobile because Hanks had no operator's license. On this occasion, however, Pinkard stated that he had no money and did not desire to sit idly in Roanoke while Hanks visited a friend. Finally, upon Hanks' offer to give him $3.00 spending money, Pinkard consented to make the trip, still maintaining that he could not stay long. Hanks assured Pinkard that he could return to Martinsville anytime he (Pinkard) so desired. En route to Roanoke the car struck a telephone pole approximately seven-tenths of a mile from the city, killing Hanks and seriously injuring Pinkard. According to Pinkard, Hanks had dozed off to sleep and upon suddenly awakening, had grabbed the steering wheel, causing the car to veer into the telephone pole.

The policy of insurance issued by United Services to Hanks contained the following language under the INSURING AGREEMENTS:

I. COVERAGE A—BODILY INJURY AND LIABILITY

"To pay on behalf of the insured all sums which the insured shall become

legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

It was further agreed in the policy as to the following:

EXCLUSIONS

"This policy does not apply: * * * (d) under Coverage A to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured if benefits therefor are in whole or in part either payable or required to be provided under any Workmen's Compensation Law, or (2) other employment by the insured; * * *."

Counsel for both sides have stipulated that there is only one issue to be resolved by this Court: whether Andrew Byrd Pinkard was an employee within the meaning of the above exclusionary clause, thus relieving United Services from liability for any judgment which he might obtain against Hanks' estate.

Assuming, without deciding, that Pinkard was an employee of Hanks within the technical, legalistic meaning of that term, nevertheless he was, at best, a "casual employee", and the courts are in much disagreement as to whether such a person is excluded from insurance coverage by virtue of a clause such as the one in this case. Annot., 50 A.L.R.2d 78 (1956). The better rule would seem to be that they are not so excluded.

If the word "employee" were being used in a statute, there would be some merit to the contention that it should be given a strict legalistic interpretation. This is not true, however, when it is used in a contract of insurance where the insured is more often than not a layman with no concept of the technical legal import of the term. Different areas of the law are rarely congruent in the geometric sense, and so the construction of a word which is applicable in one area does not have to exactly coincide with the construction applicable in another. Jewtraw v. Hartford Acc. & Indem. Co., 284 App. Div. 312, 131 N.Y.S.2d 745, 756 (1954).

The exclusion clause is a contractual limit of liability and as such is subject to rules which govern contracts in general. Harleysville Mut. Ins. Co. v. Dollins, 201 Va. 73, 109 S.E.2d 405 (1959); Ampy v. Metropolitan Cas. Ins. Co., 200 Va. 396, 105 S.E.2d 839 (1959); Marandino v. Lawyer's Title Ins. Co., 156 Va. 696, 159 S.E. 181 (1931). In construing such a clause the test is not what the insurance company intended the clause to mean, but what a reasonable person in the position of the named insured would have understood it to mean. Merchants Mut. Cas. Co. v. Manzer, 93 N.H. 34, 35 A.2d 392 (1943); Standard Acc. Ins. Co. v. Swift, 92 N.H. 364, 31 A.2d 66 (1943). See also: Liberty Mut. Ins. Co. v. U. S. Fidelity & Guaranty Co., D.C., 232 F.Supp. 76 (1964); Federal Ins. Co. v. Bock, 382 S.W.2d 305 (Tex. Civ.App.1964). Overly technical and unrealistic constructions should be avoided. Basore v. Allstate Ins. Co., 374 S.W.2d 626, 630 (Kan.City Ct.App.1963).

In Rickenbaker v. Layton, D.C., 59 F.Supp. 156, the court states that "in the construction of insurance contracts that meaning should be attributed to the language used which ordinarily is given to such language, unless it is susceptible of more than one reasonable construction, in which case it will be given that construction which is most favorable to the insured." 59 F.Supp. at 163. So even accepting United Services' contention that the clause in question is clear and unambiguous and hence should not necessarily be construed most favorably to the insured, it is still within the purview of this Court to interpret the language in light of its ordinary, everyday meaning. "The contact should be construed as a whole, and the clear and unambiguous language must be given its plain meaning." Iowa Nat'l Mut. Ins. Co. v. Fidelity & Cas. Co. of New York, 256 Iowa 723, 128 N.W.2d 891, 893 (1964). There are numerous other cas-

es which approve this rule of construction. For example, see: Ward v. State Farm Mut. Auto. Ins. Co., 241 F.2d 134 (5th Cir. 1957); London Guarantee & Acc. Co., Ltd. v. C. B. White & Bros., Inc., 188 Va. 195, 49 S.E.2d 254 (1948).

■ From Pinkard's testimony it is obvious that the parties did not even consider the possibility of an employer-employee relationship arising from their trip, and it is certainly normal that they should not. It must be admitted that there is some force to the contention of counsel for the plaintiff that an employer-employee relationship in the strict common law sense of the term was created in this case. Pinkard manifestly was not acting on his own behalf but rather completely for the benefit of the insured, and there is authority to the effect that the requisite control which distinguishes an ordinary agent from a servant or employee can be implied from Hanks' ownership of the vehicle. James v. Commonwealth, 178 Va. 28, 16 S.E.2d 296 (1941); Kavanaugh v. Wheeling, 175 Va. 105, 7 S.E.2d 125 (1940); Sydnor & Hundley, Inc. v. Bonifant, 158 Va. 703, 164 S.E. 403 (1932); Restatement (Second), Agency § 220, comment b (1957). However, it would be artificial and strained to hold that the plain, ordinary meaning of "employee" would encompass this situation. It would seem fairer to say that to a layman employment connotes some continuity of service, generally with wages as consideration, and control in fact (that is, control which the "employee" as a layman would be conscious of) rather than merely control implied in law by reason of ownership of a vehicle. Pinkard was just doing an old friend a favor, as he had done several times in the past, and he could very reasonably say that he did not consider Hanks his employer on this occasion. More important, it is most doubtful that Hanks thought, when he read this particular limitation on the coverage of the policy, that any person who drove the automobile as a favor to him would be considered his employee. However, this result would follow if a strict construc-

tion of the word "employee" is adopted, whether or not any money changed hands in the deal. See James v. Commonwealth, Kavanaugh v. Wheeling, and Sydnor & Hundley, Inc. v. Bonifant, supra. See also Dobson-Peacock v. Curtis, 166 Va. 550, 186 S.E. 13 (1936), for a case of a "chauffeur without pay." A reasonable construction of the clause would be that it excludes from coverage only such hazards as would be incident to the use of the automobile in the business of the insured, but does not operate to exclude the hazard incident to casual use which was in no way connected with a regular business or employment. See Sills v. Sorenson, 192 Wash. 318, 73 P.2d 798, 802 (1937).

For these reasons, this Court finds that Andrew Byrd Pinkard was not an employee of Clifton Wiley Hanks within the meaning of the exclusionary clause of the policy issued to Hanks by United Services, and that United Services is bound to pay any judgment which might be rendered against Hanks' estate.