**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff,

v.

**Dan DRINKARD, Jr.,** Administrator of the Estate of Dan Drinkard, III, deceased, **J. Nelson Ingoldsby,** Administrator of the Estate of Carole Perkins, deceased, and **Billy Roy Simpson,** Defendants,

and

**New York Underwriters Insurance Company,** Intervenor.

Civ. A. No. 65–C–67–A.

United States District Court
W. D. Virginia,
Abingdon Division.

Sept. 19, 1966.

Donald T. Stant and Bradley Roberts, of Stant & Roberts, Bristol, Va., for plaintiff.

George M. Warren, Jr., Bristol, Va., for defendants, Dan Drinkard, Jr., Admr. of Estate of Dan Drinkard, III, decd. and J. Nelson Ingoldsby, Admr. of Estate of Carole Perkins, decd.

H. Emory Widener, Jr., Widener, Widener & Frackelton, Bristol, Va., for defendant, Bill Roy Simpson.

Andrew P. Miller, Penn, Stuart & Miller, Abingdon, Va., for defendant, New York Underwriters Ins. Co.

## OPINION and JUDGMENT

DALTON, Chief Judge.

In this case the court on June 8, 1966 filed a written opinion and entered judgment accordingly, which opinion is of record in 254 F.Supp. 867, to which reference is here made. Thereafter, to wit, on June 23, 1966, by reason of a misunderstanding between the court and counsel as to whether the action was intended to be submitted on its merits, the court set aside and annulled the order of June 8, 1966. A full and complete hearing was then held on July 26, 1966, and the case was submitted to the court for determination.

The court reaffirms its opinion set forth in the decision of June 8, 1966, reported in 254 F.Supp. 867, and files this supplemental opinion and order thereon.

In a memorandum filed after the decision of June 8, 1966 was set aside, counsel for USF&G argues that USF&G *did not intend* to "take on any teenage risks" when it issued the policy and that instead the risk intended to be covered by the policy extended only to automobiles furnished in connection with the business of the insured. Counsel states that, "We have not been able to find any authorities dealing with the particular language of this GARAGE LIABILITY POLICY or the endorsement, but believe the general principles governing the construction of contracts sustain our position." However, it is a well established "general principle" of insurance law that in construing a contract of insurance the test is not what the insurer intended the policy to mean, but what a reasonable person in the position of the named insured would have understood it to mean. Merchants Mut. Cas. Co. v. Manzer, 93 N.H. 34, 35 A.2d 392 (1943); Standard Acc. Ins. Co. v. Swift, 92 N.H. 364, 31 A.2d 66 (1943); United Services Automobile Ass'n v. Pinkard, 258 F.Supp. 804 (W.D.Va.1965), aff'd 356 F.2d 35 (4th Cir. 1966). See also: Liberty Mut. Ins. Co. v. United States Fidelity & Guaranty Co., 232 F.Supp. 76 (D.Mont.1964); Federal Ins. Co. v. Bock, 382 S.W.2d 305 (Tex.Civ.App.1964). Since Simpson is covered by the very terms of the policy, some secret and unmanifested intent on the part of the insurer cannot be controlling.

The policy in question was written specifically for a corporation—Henard Enterprises was the named insured and not merely some sort of incidental beneficiary. Therefore, upon drafting the policy it was incumbent upon USF&G to consider all of the acts of the corporation which might fall within the terms of its policy. It would not seem unusual for the child of a corporate executive to be given a "company car" for his or her own use, and if the insurer wants such persons to be excluded from coverage it can so indicate. It should also be noted, in considering the argument that only a business related use was intended insofar as the risk was concerned, that paragraph 1(b) (i) of the policy provides for coverage of the spouses of the parties named therein. It would not seem that this is consistent with the argument that the risk contemplated extended only to a car used in connection with the business of the named insured.

At the time of the trial on July 26, 1966, counsel for USF&G conceded in oral argument that if Kathy Henard was a person to whom the named insured furnished an automobile for her regular use under policy provision 1(b) (ii), coverage was afforded Simpson under provi-

sion 1(4) by the amendment which was added to the policy and which is set forth in the opinion of June 8, 1966. In the memorandum submitted to the court after the trial was held on July 26, 1966, counsel for USF&G now states that such a concession should not have been made since Kathy could not grant permission (as provided in provision 1(4)) to Simpson, since she was an infant and was herself restricted in her use of the car. It appears to the court that this is the same argument which was advanced originally by USF&G and which was rejected by the court in the opinion of June 8, 1966, for the reasons stated therein. The court is of the opinion that the reasoning stated therein is still applicable to this argument and that it is not affected by the case of Messer v. Reid, 186 Tenn. 94, 208 S.W.2d 528 (1948), cited by USF&G in its memorandum, as that case involved the "Family Purpose Doctrine", which is not the situation in the case at bar.

Since the court does not accept the argument that Kathy was not in a position to give permission to Simpson to use the car, it would seem (as USF&G conceded before) that Simpson must be held to be covered by the policy if Kathy is found to fall within the provisions of 1(b) (ii), for Simpson would then fall within the terms of provision 1(4) and would thereby be afforded coverage.

The argument now advanced by counsel for USF&G in contravention of this proposition is that Kathy does not fall within the provisions of 1(b) (ii). It is the position of USF&G that the corporation obtained the car for its president, Ron Henard, to use as he saw fit, and that he in turn provided the vehicle for the use of his daughter. Thus, argues USF&G, Kathy's father was covered by the provisions of 1(b) (ii) and Kathy may have been covered by provision 1 (4), but Simpson could not have been covered since "the chain of permission was broken". It is not argued that the corporation was not the one which, through the acts of Ron Henard, ordered the car, and it is not argued that the corporation had no authority to lend the car to Kathy; it is argued instead that in fact the car was ordered by the corporation for its president, Ron Henard, and not for his daughter Kathy. The court does not accept this argument as the evidence clearly indicates to the contra.

The evidence indicates that the car was chosen especially for Kathy, that the color and the equipment for the car was chosen from the catalogue with her in mind, even as to a small six-cylinder engine which it was thought would be best for her to have while she was learning how to drive. Nowhere does it appear that the car was ordered for the use of Ron Henard, as is urged by the plaintiff USF&G. It is the opinion of the court that the car was in fact ordered for Kathy's use and not for her father; from this and all the facts and circumstances of this case it follows that Kathy fell within the provisions of 1(b) (ii) and that the permission given Simpson by her brought him within 1(4), with the final result that both of them were covered by the terms of the policy.

Counsel makes the final argument that even if the court decides that it is obligated to defend Billy Roy Simpson, it should not require USF&G to pay any judgment rendered against him, noting that the policy obligation to defend is separate from the policy obligation to pay a judgment. It is further urged by USF&G that there should be no decision on this point because substantive questions of law are involved which will necessitate a consideration of the tort law of Tennessee and because it is possible that Simpson could later be faced with a plea of *res judicata* in the state court if USF&G be adjudged liable for any judgment which may be rendered against him.

█ █ It is the opinion of the court that this argument must also be rejected. The court cannot see why the policy provisions should be considered separately in light of the fact that the terms of the policy (under "PART I—LIABILITY") obligate the company to both "pay on

behalf of the Insured" and "defend any suit against the insured". Furthermore, the policy provides that the company shall be liable for sums which the insured becomes "legally obligated to pay", and a holding that such sums must be paid by the company is not a determination on the merits of the case as to whether Simpson is in fact legally obligated to pay. It is still left up to subsequent proceedings to determine the liability of Billy Roy Simpson.

The court reaffirms the position heretofore taken and adds by this supplemental memorandum and order that Billy Roy Simpson is an insured under the garage liability policy issued by United States Fidelity and Guaranty Company to Henard Enterprises, Incorporated, and that the insurer is obligated to appear and defend Simpson in the action now pending in the Corporation Court of Bristol, Virginia, and to pay any judgment which might be rendered against Billy Roy Simpson in that court.

A fee of $400.00 is allowed to H. Emory Widener, Jr., guardian ad litem for Billy Roy Simpson to be taxed as part of the costs of this proceeding.